## BLUNT *vs.* AIKIN.

An *action on the case* for flowing lands will not lie against a former owner of land who erected a dam and built a mill, by means of which the injury is done, where it appears that other persons are *in possession of the premises* occupying them as their own, and there is no evidence that they hold as the *tenants* of such former owner. The action must be *against the persons in possession.*

THIS was an *action on the case*, to recover damages for the flowing of lands by means of a dam, tried at the Rensselaer circuit in September, 1833, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The plaintiff became the owner of the premises flowed, in 1832. In 1818 the defendant raised a dam on a lot below the premises in question 3 or 4 feet higher than a dam which was there formerly, by means whereof about 1½ acres of the premises subsequently purchased by the plaintiff were flowed; and about 5 or 6 years before the trial the defendant built a

large brick mill, which has since its erection been supplied with water from the pond created by the dam. The plaintiff was then the *owner* of the premises on which the mill was built. When the plaintiff bought the premises owned by him, the brick mill was in the possession of two sons of the defendant, who *occupied it as their own*, and have since continued to do so. There was no proof that they held as *tenants* under the defendant. The plaintiff was *nonsuited*, and now asks for a new trial.

*S. Stevens*, for the plaintiff.

*S. Cheever*, for the defendant.

*By the Court*, SAVAGE, Ch. J. The judge nonsuited the plaintiff on the ground, as is supposed, that an action would not lie against the defendant, as he was not *in possession* of the mill and dam when the injury was done for which the suit was brought. The plaintiff moves for a new trial, and asserts the principle that this action lies against the person who caused the dam to be erected, although he may have transferred it to another, and such other be in possession at the time of the injury complained of. For the purpose of the argument I shall assume, what seems to me to have been sufficiently proved, that the defendant erected the dam in 1812, that he caused it to be raised higher by 3 or 4 feet in 1818, and that in consequence of the raising of the dam the injury was done to the land of which the plaintiff subsequently became owner. I shall also assume, that before the plaintiff became the owner of the premises in question, the defendant had divested himself of the possession of the dam and mill. The case does not show any connection between the defendant and his sons, in relation to the occupancy of the mill. Had the relation of landlord and tenant been shown, that might have varied the question. The plaintiff's counsel, to sustain his proposition, refers us to the case of *Rosewell* v. *Prior*, 2 *Salk.* 460. That was an action on the case for stopping up the plaintiff's ancient lights. The defendant, tenant for years, erected the nuisance, and afterwards made an under lease to J. S. The

question was whether an action would lie against the defendant for the *continuance* after he had made an under-lease ; there had already been a recovery against him for the erection. The court said the action lay, because he transferred it with the original wrong, and his demise affirms the continuance of it. The case is much more fully reported in 1 *Ld. Raym.* 713. It there appears expressly, that the defendant had demised the new house to one Shuttleworth, rendering rent. The cause was several times argued by distinguished counsel. For the defendant it was argued, that the action should have been brought against the tenant in possession, as the injury which the plaintiff sustained proceeded from him and not from the defendant. The court admitted that the action would lie against either the defendant or his lessee, and observed that it was reasonable that the action should lie against the defendant, because he erected the nuisance, for some time continued the enjoyment, and then demised it to S. rendering rent, thereby agreeing that it should continue, and he has a *rent* for it. We are also referred to *Penruddock's case,* 9 *Co.* 101. That was a case of *quod permittat prosternere,* between Clark, plaintiff, and Penruddock, defendant. The case was this : John Cosk built a house on his own ground, so near the curtilage of the house of Thomas Chichely, that it hung over three feet of the said curtilage, and threw the water upon Chichely's premises. Chichely conveyed his house to Clark, and Cosk conveyed to Penruddock. The first question was whether the action lay for the *feoffee.* It was resolved that the dropping of the water was a new wrong, and that the action lay by the feoffee of Chichely against the feoffee of Cosk, if the nuisance be not reformed after request made ; but against him who did the wrong the action lies without request. It was held too that the feoffee might abate the nuisance, even before prejudice; for it was reasonable that he should prevent the prejudice, and not stay till it be done. So too it was held in *Beswick* v. *Candee, Cro. E.* 402, 520, that an action on the case did not lie for a nuisance, because the plaintiff might have his remedy by an *assize* or *quod permittat.* That was an action on the case, for that the defendant erected a dam in a certain river, whereby it surrounded the land of J. S. who af-

terwards enfeoffed the plaintiff thereof. To this declaration
there was a demurrer, and held as above that this action did
not lie. The proceedings in an assize of nuisance, and *quod*
*permittat prosternere*, are now obsolete. It may, however, be
proper to remark, that the assize of nuisance was a writ com-
manding the sheriff to summon an assize, that is a jury, and
view the premises, and have them at the next assizes, that
justice may be done. If the plaintiff succeeded, he had judg-
ment, 1. that the nuisance be abated; 2. to recover damages.
This action originally lay against the wrong-doer himself, but
not his *alienee*. That was remedied by the statute of Westm.
2. Before this statute, the party injured by a nuisance which
was aliened, was driven to his *quod permittat*, which was in
the nature of a writ of right, and commanded the defendant
to permit the plaintiff to abate the nuisance, or shew cause
why he will not. This writ lay as well between the parties
to the nuisance as their *alienees*. Both these remedies are
superseded by the action on the case, in which damages alone
are recoverable, but not judgment to abate the nuisance. In
this action possession alone is sufficient to be shown; and it
lies by the person in possession against another who has like
possession. In this respect it differs from those proceedings
in the nature of real actions, where it was necessary that the
freehold should be in the plaintiff and defendant respectively.
*Jacob's Law Dict. tit. Nuisance*, III, 1, 2, 3. The case of
*Cheetham* v. *Hampson*, 4 *T. R.* 318, was a case somewhat
analogous. That was an action on the case against the de-
fendant, who was *owner* of the fee, for not repairing the
fences of a close, whereby the plaintiff sustained damage.
Another person was in possession, but the plaintiff had a ver-
dict. Lord *Kenyon* said it was clear that the action could
not be supported against the owner of the inheritance when
the possession was in another person. It was notoriously
the duty of the occupant to repair the fences, so that the
landlord might maintain an action for neglect, without any
agreement for that purpose, upon the ground of an injury to
the inheritance. *Buller*, justice, said that with respect to
the case of *Rosewell* v. *Prior*, which was the only one cited
where the action was maintained against the owner out of

possession, it was very distinguishable, for there the defendant *let* the premises with the nuisance upon them which had been before erected; and he remarks, that the court relied upon the fact that he had been guilty of the misfeasance, and affirmed the continuance of the nuisance, which might be said to be a continuance by himself. It would seem, therefore, that had it been shown that the defendant in this case had rented the premises to his sons, an action might be maintained against him. A question might perhaps arise, whether the present plaintiff could maintain the action, as he had no interest in the premises injured by the nuisance, until some time after the defendant had been out of possession of the nuisance itself. If, however, the receipt of rent is a sufficient affirmance of the nuisance and participation in its continuance to make him liable to any one, he might be held liable to the person injured, either by the original erection of the nuisance or by the continuance of it.

As this case appeared at the trial, the judge decided correctly. Although the defendant had been in possession when the dam was built, and when it was raised, and was therefore, at that time, liable for any damage caused by it; yet, before the plaintiff sustained any damage, he had left the possession, and other persons had assumed it, and were unquestionably liable. Possession is *prima facie* evidence of property, and I apprehend, as against the possessor, conclusive, in so far as any liability is imposed by the fact of possession or ownership; the law will presume the person in possession to be the owner, but there is no presumption of tenancy arising from the fact of succession in possession. If the relation of landlord and tenant existed between the defendant and his sons, it should have been shown; it cannot be presumed.

New trial denied.