## WAGGONER *vs.* JERMAINE.

If one erect a nuisance on his own land, (e. g. by obstructing a water course,) to the injury of the land of another, and then convey the premises to a purchaser with warranty, he nevertheless remains liable in an action on the case, for the damages occasioned by the continuance of the nuisance subsequent to the conveyance.

The case of *Blunt* v. *Aikin*, (15 *Wend.* 522,) examined and limited.

In the case of a *continuing nuisance*, the defendant, in order to limit the recovery to the damages sustained within six years prior to the commencement of the suit, must plead the statute of limitations.

CASE, for overflowing the plaintiff's lands, commenced August 10th, 1838, and tried at the Steuben circuit in October, 1845, before DAYTON, C. Judge. The plaintiff was the owner of land situated on the margin of the inlet of the Crooked Lake and along the adjacent shores of the lake, a portion of which he purchased and took possession of in the year 1830. The residue, being a large farm, was purchased by him in December of the same year, and he was to have full possession of it in May, 1835; but in the mean time he had a right to enter for the purpose of constructing a ditch. At the date last mentioned he received a conveyance and took possession of the entire farm. The defendant's dam was across the outlet of the lake. It was originally built prior to 1812, and was carried off by a flood in 1817, and rebuilt the following year. About 1822 it was again nearly destroyed by a flood, and rebuilt soon afterwards. In March, 1834, the defendant, by the direction or permission of the canal commissioners, raised his dam ten inches, by timbers placed along the top of it, and these were continued upon it until the time of the commencement of the suit.

Waggoner *v.* Jermaine.

The defendant, on the 28th day of August, 1836, conveyed the premises on which the dam was situated to John Sloan and others for $25,000. This conveyance contained a clause selling and conveying to the grantees the right to flow any lands of the grantor "to high water mark, and as far as has hitherto been necessary for the use of the mills on the premises above conveyed, the dam remaining at its present height." It also contained covenants of seizin and of warranty of "the premises above conveyed." The grantees went into immediate possession, and they and those deriving title from them have ever since possessed and occupied the premises.

Evidence was given by both parties upon the question whether the dam was made higher than before at the several times when it was rebuilt as above mentioned, and as to the effect of these erections and of the timbers placed upon the dam in 1834, in setting back the water upon and overflowing the plaintiff's lands. Points were made respecting the defendant's right to increase the height of the dam under the authority of the canal commissioners; which so far as concerned the law of the case were determined in conformity with the decision of the court for the correction of errors in this case, in 7 *Hill*, 357, (*and see* 1 *id.* 279;) and the questions of fact were submitted to the jury.

The judge charged the jury that independently of the defendant's justification under the state officers, in regard to which he gave them special instructions, if the defendant had within twenty years raised his dam so as to cause the waters of the lake to overflow the plaintiff's land to his injury, and continued the obstruction to the time of the commencement of the suit, the plaintiff was entitled to recover the damages which he had sustained from the time he became possessed of the premises owned by him until the suit was commenced, notwithstanding the defendant's conveyance to Sloan and others in August, 1836. The defendant's counsel excepted, and the jury found a verdict for the plaintiff for $1195. The defendant moved for a new trial on a case.

*J. Taylor*, for the defendant, insisted 1. That the defendan⁺ was not liable for the damages sustained subsequent to the con veyance of August, 1836. (*Blunt* v. *Aikin*, 15 *Wend.* 522.) 2. That the recovery should have been confined to the damages incurred within six years prior to the commencement of the suit. (*Baldwin* v. *Calkins*, 10 *Wend.* 167, 177.)

*B. Davis Noxon*, for the plaintiff, to shew that the defendant continued liable after his conveyance, cited *Angell on Water Courses*, 149 *to* 151, 153; 3 *Har. & McHen.* 441; *Staple* v. *Spring*, (10 *Mass.* 72;) 2 *Salk.* 460; 12 *Mod.* 639; *Dyer*, 320; 1 *Ld. Raym.* 713; *Cro. Eliz.* 373; 3 *Dane's Abr.* 57; 2 *R. S.* 332, § 2. *Blunt* v. *Aikin*, cited contra, he said was a different principle, and was not applicable here. The defendant should have pleaded the statute to enable him to avail himself of the limitation of six years.

*By the Court*, JEWETT, J. It is contended by the counsel for the defendant that the judge erred in instructing the jury that the defendant was liable for damages to the time of the commencement of the suit, notwithstanding he conveyed his interest in the mill premises to another in August, 1836 ; and the ground taken is supposed to be sustained by the case of *Blunt* v. *Aikin*, (15 *Wend.* 522.) I think, however, that on a little examination of that case and of the principles upon which it was decided, a material distinction between it and the present may be seen. There the action was case for flowing the plaintiff's lands by means of a mill dam. The evidence established that the defendant erected the dam in 1812. In 1818 he raised it three or four feet. About five or six years before the trial in 1833, the defendant being the owner of the premises, built a mill which was supplied with water from the pond created by the dam, which flowed a small piece of land subsequently purchased by the plaintiff. When the plaintiff purchased the land, the mill was in the possession of two sons of the defendant, who occupied it as their own, and had since continued to do so. There was no proof that they held as tenants under the defendant, nor under

what title they took possession. No privity of estate between the defendant and the occupants was shown. Savage, Ch. J. in delivering the opinion of this court, reviewed the cases of *Rosewell* v. *Prior*, (2 *Salk.* 460;) *Penruddock's case*, (5 *Co.* 101;) *Beswick* v. *Cunden*, (*Cro. Eliz.* 402, 520,) and *Cheetham* v. *Hampson*, (4 *Term R.* 318,) and came to the conclusion that the action could not be maintained, as it was not shown that the occupiers were the tenants of the defendant; and he said that although the defendant had been in possession, when the dam was built and raised, and was therefore at that time liable for any damage caused by it; yet before the plaintiff sustained any damage he had left the possession, and other persons had assumed it as owners and were liable.

The first case referred to was an action on the case for stopping up the plaintiff's ancient lights. The defendant, tenant for years, erected the nuisance, and afterwards made an under lease to J. S. The question was whether the action lay against the defendant for a continuance after the making the under lease. There had already been a recovery against him for the erection. The court said the action lay, because he transferred it with the original wrong, and his demise affirms the continuance of it. The next authority—*Penruddock's case*—although it had little or no application to the question under consideration, having been referred to by counsel, was reviewed. It was a writ *quod permittat prosternere*, between Clark, plaintiff, and Penruddock, defendant. The case was this: Cosk built a house on his own ground so near the curtilage of the house of Chickeley that it hung over three feet of said curtilage and threw the water on Chickeley's premises. Chickeley conveyed his house to Clark, and Cosk conveyed to Penruddock. The first question was, whether the action lay for the feoffee Clark. It was resolved that the dropping of the water was a new wrong, and that the action lay by the feoffee of Chickeley against the feoffee of Cosk, if the nuisance be not reformed after request made; but against him who did the wrong the action lay without request. In *Beswick* v. *Cunden*, the action was case, for that the defendant erected a dam in a certain river, whereby it surrounded the land

of J. S., who afterwards enfeoffed the plaintiff. On demurrer it was held that the action did not lie for a nuisance, because the plaintiff might have his remedy by an assize or *quod permittat.*

By the common law the remedy for an injury sustained by a private nuisance was by action on the case for damages, by assize of nuisance, or by the writ of *quod permittat prosternere.* In the former action the party injured only recovered satisfaction for the injury, but could not thereby remove the nuisance; in the two latter, if the plaintiff prevailed he not only recovered damages for the injury sustained, but judgment that the nuisance be abated or removed. But these actions could only be brought by the tenant of the freehold; a lessee for years being confined to his action on the case. An assize of nuisance was a writ wherein it was stated that the party injured complained of some particular fact done, *ad nocumentum liberi tenementi sui,* and therefore commanding the sheriff to summon an assize, that is, a jury, and view the premises and have them at the next commission of assizes that justice might be done. If the assize was found for the plaintiff he had judgment of two things : 1. To have the nuisance abated ; 2. To recover damages. At the common law this writ did not lie against the alienee of a wrong-doer, for the purchaser was to take the land in the same condition it was conveyed to him, but it lay against the wrongdoer himself, who levied or did the nuisance. This was remedied by the statute of Westminster 2, 13 Edw. 1, ch. 24. It gave the form of a new writ in such case, differing from the old writ in this: it stated that the wrongdoer and the alienee both raised the nuisance, and damages were recoverable against the person who sold the land, if the nuisance were not abated on request made to him, or against the person to whom he sold it. Before this statute the party injured, upon any alienation of the land whereon the nuisance was set up, was driven to his *quod permittat prosternere,* which was in the nature of a writ of right. It commanded the defendant to permit the plaintiff to abate the nuisance complained of, and unless so permitted to summon him to appear in court and show cause why he should not. This writ lay as well for the alienee of the party first injured

as against the aliance of the party first injuring. Both these actions of assize of nuisance and of *quod permittat prosternere,* were out of use and had given way to the action on the case, and were finally abolished by statute, 3 *and* 4 *Wm.* 4, *ch.* 27, § 36. (*See* 3 *Black. Com.* 221; 2 *Tomlin's Law Dict. tit.* *Nuisance,* 2, 4; 3 *id. tit. Quod permittat prosternere.*) The common law remedy by writ of nuisance subject to certain provisions is retained by our statute. (2 *R. S.* 332.) It is there provided that the plaintiff may sue in one action the party erecting a nuisance and him to whom the land on which it is raised has been transferred or aliened.

The remaining case examined by the court, in *Blunt* v. *Aikin,* (*Cheetham* v. *Hampson,*) it seems to me is not very analogous to this. That was an action on the case against the defendant who was owner of the fee, for not repairing the fences of a close whereby the plaintiff was damaged. Another person was in possession of the premises. It was objected that the action could only lie against the actual occupier. Lord Kenyon, Ch. J. said, it is clear that this action cannot be supported against the owner of the inheritance, when it is in the possession of another person. It is so notoriously the duty of the actual occupier to repair the fences, and so little the duty of the landlord that, without any agreement to that effect, the landlord may maintain an action against his tenant for not so doing, upon the ground of the injury done to the inheritance; and deplorable indeed would be the situation of landlords, if they were liable to be harassed with actions for the culpable neglect of their tenants. Buller, J. said, that with respect to the case of *Rosewell* v. *Prior,* (2 *Salk.* 460,) which was the only one cited where the action was maintained against the owner out of possession, it was very distinguishable; for there the defendant let the premises with the nuisance upon them, which had been before erected; and he remarks, that the court relied upon the fact that he had been guilty of the misfeasance, and affirmed the continuance of the nuisance, which might be said to be a continuance by himself. *Payne* v. *Rogers,* (2 *H. Black.* 350,) was an action on the case against the owner of a house in the

occupation of his tenant, for an injury sustained by the plaintiff in consequence of the want of certain repairs upon the premises. The defendant, the owner and landlord, was held liable on the ground that by an agreement between him and his tenant, he was bound to repair.

In *Blunt* v. *Aikin*, I repeat, the case did not show the relation in respect to the premises, which existed between the defendant, the former owner, and the occupiers, at the time of the injury sustained by the plaintiff. In the absence of such ¬roof, it was very properly held that the law presumed the occupiers in possession as owners. It was not held that the law presumed, as it clearly did not, that the former owner was under a covenant to uphold their possession. The furthest then that the case goes is, that when the defendant had conveyed the lands on which the nuisance had been placed by him and surrendered the possession to his grantee before the time when the plaintiff acquired title or possession of the lands subsequently injured, without any covenant of warranty or agreement to uphold the grantee in the occupancy of the premises, that the action would not lie against such former owner and erector of the nuisance. The principle, however, is recognized and sanctioned by the reasoning in that case, that where the defendant is out of possession at the time the injury was committed, and another person has the entire possession, if he was the erector of the nuisance and owner of the premises, and under some agreement with the possessor by which he was bound to uphold him in possession, the action would well lie against him on the ground that he, by such relation with the occupier, had affirmed the continuance of the nuisance; that it might be said to be a continuance by himself.

I am unable to see any reason why the same principle does not with as much force apply to sustain the action against the defendant in this case. He erected the nuisance, for many years continued the enjoyment, and then conveyed and surrendered the possession of the premises to another, with covenants of warranty for quiet enjoyment, and the right to flow as far as had been theretofore necessary for the use of the mills on the

Waggoner *v.* Jermaine.

premises, by the dam thereon at its then height. I think that the defendant's covenants, contained in his deed to Sloan, are at least as strong and clear an affirmance of the nuisance in the possession and enjoyment of his grantee, as such affirmance was shown in either of the cases referred to, and upon that ground I am of opinion that there was no error in the charge of the judge as to the defendant's liability, notwithstanding his conveyance and surrendering possession to his grantee in 1836. This principle is illustrated and sustained, in addition to the cases already referred to, by *Staple* v. *Spring*, (10 *Mass. Rep.* 72, 77 ;) *Angell on Watercourses*, 152, *and the cases there cited.*

There was no error in not limiting the recovery to damages sustained within six years prior to the commencement of the suit. The statute of limitations was not pleaded. If it had been, the defendant might have availed himself of that defence. (2 *R. S.* 296, § 18, *sub.* 7.) The case of *Baldwin* v. *Calkins*, (10 *Wend.* 171,) was not intended to intimate any other rule, where a suit is commenced for such a cause of action and the statute is not pleaded.(*a*)

My conclusion is that no error was committed by the judge on the trial of the cause.

New trial denied.

(*a*) The only exception to the rule requiring the statute of limitations to be pleaded, is in the case of *penal actions*, in which it seems to be well settled that the plaintiff must show the suit commenced within the time limited for bringing the action. (2 *Saund.* 66, *note* (3) ; 1 *Chit. Pl. ed.* 1837, *p.* 517, *note* · *Wilkinson on Limitations,* 104.)