WILLIAM S. EAKIN and others v. JOSHUA W. BROWN and another.

The tenant of a part of a building, not guilty of negligence or malfeasance, is not liable to a tenant of another portion of the same building, for damages resulting from the defective construction of the demised premises, or from the insufficiency of a fixture therein, by which the flow of Croton water is regulated.

If injury result from the negligence of the owner, either in constructing or upholding the freehold, he is liable, and cannot by letting, divest himself of such liability; although he is not in general responsible for the negligence of the tenant in the use. If the injury result from the negligence of the tenant, he is liable. Thus, both landlord and tenant may be responsible for the same injury.

As between different tenants, under a common landlord, the question of liability for injuries arising from the condition of the premises, is always one of negligence in the use. The negligence may consist in either the careless use of well constructed apparatus, or in the use of apparatus which the tenant has reason to know is in a condition unfit for use.

Such tenants are not under contract with each other, express or implied; but their reciprocal obligations rest upon the duty, which every man owes, to employ care, that in the exercise of his own rights, those of his neighbor be not injured.

The doctrine, that a party cannot recover, where his own negligence concurred in

producing the injury for which he seeks redress, does not bind him to the utmost possible caution, but to ordinary care and prudence only.

The case must be a very peculiar one, which will justify the court in rejecting evidence, because the fact, which it tends to prove, is already sufficiently established; to entitle a plaintiff to say that the defendant has not been prejudiced, the fact in question should be conceded on the trial, thus dispensing with further proof.

APPEAL from a judgment entered at special term, in favor of the plaintiffs, upon a verdict. The facts appear fully in the opinion.

*Wm. Allen Butler*, for the defendants.

*A. Oakey Hall*, for the plaintiffs.

BY THE COURT. WOODRUFF, J.—The plaintiffs being in the occupation of the first floor and basement of a store in the city of New York, sustained damage by reason of the overflowing of a reservoir of Croton water located in the second story of the building, which occurred on Sunday, the 24th day of June, 1849, while the store was closed.

The defendants were then in the occupation of the second story of the store; and this action for the damages sustained by the plaintiff, is founded upon an allegation that the defendants negligently, wrongfully and unjustly suffered and permitted the apparatus connected with the reservoir to become, be and continue in such bad order and condition that the water overflowed therefrom, causing the damage, &c., when it was, by reason of their possession, use and occupation, their duty to maintain and keep the apparatus, &c., in good and sufficient order and condition to hinder and prevent the water from overflowing, &c.

The answer of the defendants denies, that it was their duty, by reason of their possession, &c., to maintain and keep the apparatus, &c., in good and sufficient order to prevent the water from overflowing, &c. And also denies, that they negligently, &c., suffered the apparatus to become, be and continue in such bad order and condition that the water overflowed,

&c.; and avers, that the overflowing of the water (if it happened as alleged) was not occasioned by any act or omission, or by any negligence on the part of the defendants, but was owing to the peculiar state and condition in which the Croton water then was, or to the sudden rise of the water, or to some other cause or circumstance over which the defendants had no control, and for which they are not responsible.

It is not doubted that the evidence on the trial proved that the overflow occurred, and that it occasioned damage to the plaintiff, to the extent of $299 82, the amount of the verdict. And the following circumstances may, upon the testimony, be taken for the purposes of this appeal, as conceded or proved.

The Croton water is admitted to the building through a pipe leading from the underground main conduit in the street, which pipe passes under ground, and beneath the basement floor to the rear of the basement, and thence up through the several stories to the top of the building, connecting on the second story with the reservoir in question. The only means of shutting off the water from the upper stories, are a stop-cock placed under the floor of the basement, to which access is had through a small opening or trap-door in the floor, by means of which the occupiers of the first floor and basement had the actual control of the pipes distributed throughout the building.

The reservoir in question receives the water through a stop-cock attached to one end of a rod, to which a hollow copper ball is fastened at the other end, in such wise that when the water flows into the reservoir the ball floats on the surface, gradually closing the stop-cock,—so that when the reservoir is full, the closing of the stop-cock cuts off the supply, and when water is drawn from the reservoir the ball gradually falls, the stop-cock is opened and the reservoir is replenished. Apparatus of this description is in common use throughout the city, and it is not denied, that when in proper working condition, it is safe and prudent to employ it for the purposes for which it is designed.

The immediate cause of the accident, according to the testimony, was as follows:—For some two weeks previous to the

Sunday in question, (in consequence of the low state of the Croton water at the basin from which the city is supplied,) the water in the second story was deficient. But by reason of an increased supply at the time of the occurrence, the reservoir was filled—the rod and ball failed to rise or float upon the surface so as to close the stop-cock, and an overflowing of the water was the necessary consequence.

Testimony was given tending to show that the joint of the stop-cock had become " stiff," and required oiling to make it work with such ease that the water could raise the ball and rod. Other testimony, that when the reservoir was empty, the rod and ball fell to a perpendicular position below the stop-cock, so that the water being admitted did not raise it. And it seems to have been deemed a matter of dispute on the trial, whether the apparatus was defective in its original construction, and therefore liable to get out of order, or whether its construction was prudent and proper, and its failure to work on this occasion was owing to a want of proper attention to prevent rust arising from temporary disuse. The proof was, however, that from the fall of 1845, when the water was introduced into the building, to June, 1849, the time of the accident, it had invariably worked well.

Upon a state of the case, substantially as above recited, the defendants offered in evidence a lease from the owners of the building to themselves, of that portion of the premises which they occupied, dated February 1st, 1849 ; and offered to prove that the plaintiffs also rented the first floor and basement from the same owners.

Upon objection by the plaintiffs, the judge presiding at the trial rejected the evidence as irrelevant, and to this rejection, exception was taken by the defendants, which is now urged as the first ground for reversing the judgment herein.

In regard to this exception, it is at present sufficient to say, that the oral testimony previously given, abundantly showed that the plaintiffs and the defendants were both tenants of the same owners, and that fact was in no wise questioned on the trial ; and the counsel for plaintiffs now insist that the defendants

have not been prejudiced by this ruling.    The case must be a very peculiar one, which will justify the court in rejecting evidence because the fact which it tends to prove is sufficiently proved already..  And although the plaintiffs' counsel *now* urge this as a reason for disregarding the exception, that was not the ground of the rejection.  He should, in order to entitle him to say that the defendants have not been prejudiced, have conceded the fact on the trial, thus dispensing with any proof on the subject.

Whether the evidence was or was not relevant, depends upon the question, whether, for the purposes of this case, the *tenant* of the second story was under the same liabilities to the plaintiffs (tenants below) as if he were owner ; for if not, the fact that he was tenant and not owner was relevant.

And it may also depend upon the question, whether a tenant of a second story, under a lease by which the common landlord is bound to make repairs, is under the same liabilities to the tenants below, as if he were bound himself to make repairs, for if not, then the terms of the letting were relevant.

In this case, however, the rejected lease has not been submitted for our examination, and it nowhere appears that the subject of repairs was adverted to, or that the defendants' offer embraced anything more than the mere purpose to show that " the plaintiffs and defendants were both tenants of the same owners."  It was not, therefore, insisted that in this case the defendants' immunity rested on any covenant by the owners of the buildings to make the repairs, nor was the lease offered as proof of any such covenant.  And yet the leading case referred to by the defendants' counsel (*Paine* v. *Rogers*, 2 H. Bl. 350) was decided mainly, if not altogether, upon the ground that the landlord and not the tenant was bound by the lease to repair the premises.

Whether, in the absence of any provision in the lease, relating to repairs, the landlord is bound to repair, does not alter the question.  The lease was not offered to show any such obligation.

The only material question, therefore, under this exception

Eakin v. Brown.

is, was the fact that the plaintiffs and defendants were both tenants of the same owners, material? And this is another form of the question above stated. Is the tenant of a second story under the same duties and liabilities to the tenants below, in respect of accidents like the present, as if he were owner of the building?

This involves the main question arising on exception to the charge, and may, therefore, be considered in connection therewith.

The defendants' counsel requested the judge to charge the jury,

"That in cases of this description the defendants are not bound to exercise more than ordinary care and caution, and unless a direct omission of such care and caution, as the cause of damage in this case, be affirmatively proved, the plaintiffs cannot recover."

And also, "That the mere fact of the occurrence of the accident, owing to a defect in the apparatus, is not enough to charge the defendants. The knowledge of such defect, in such a manner and at such a time as to enable the defendants to prevent or stop the overflow of water, must be brought home to them, and some distinct act of negligence causing such overflow must be proved."

The judge charged, that "if the defendants used a particular contrivance for the Croton water, and *from any cause* it does not work, they must be responsible." This proposition lays entirely out of the case all questions of care or negligence on the part of the defendants, and places them in the condition of absolute guarantors that the apparatus shall, at all events, so answer the purposes of its construction that no damage shall result to the tenants below, under any circumstances. This portion of the charge was, however, in some degree modified by subsequent observations, viz.: "That if the inevitable result of its use be, that under a certain concurrence of circumstances it would get out of repair, or if there are certain contingencies under which it will cease to work, they, the parties using it, must be held responsible for the damage result-

ing. That the defendants should not use a machine which is liable to accident; and if they do use such a machine, and an accident occurs, they must be held responsible."

These and other like observations contained in the charge, although they in some sort modify the first proposition above stated, still proceed upon the same leading idea, that the tenants of the second story are, towards the tenants below, guarantors that the apparatus employed above is so constructed, that under no contingencies it will cease to work—or, at least, that it is so constructed as to be liable to no accident.

It is true, that in a subsequent part of the charge, the judge stated, that "if the reservoir was capable, of its kind, for ordinary purposes, the defendants would not be held liable if it failed to work on an extraordinary occasion." It is not easy to see how this observation can be reconciled with the instruction, that "if from *any cause* it ceased to work," or "if there are certain *contingencies* under which it will cease to work, the defendants are responsible." But be this as it may, the whole scope of the charge excluded inquiry into the question of the defendants' negligence, and made the case depend upon the *construction* of the apparatus; and the duty of the defendants was exhibited in the aspect of guarantors of the sufficiency and good order of the apparatus in question.

In this I think there was an error: every work of human hands is "liable to accident;" and to hold that tenants are liable for every accident which may occur in the careful and prudent use of the premises they occupy, appears to me imposing upon them a responsibility which they ought not to bear, and which the law does not attach to their condition; and in my judgment, the same may be said of the prudent use of contrivances connected with the demised premises which are defectively constructed.

For example: suppose the tenant of a loft in a store erected for the purpose of storage, and leased to him for that purpose, prudently and carefully employs it in storing goods, and through a defect in the timbers, the floor gives way and injures the property of a tenant below; or, the tenant of a loft being en-

gaged in raising goods through a hoistway, conducts with care and prudence, and yet, by reason of a defect in the construction of the wheel or pulley, of which he had no knowledge, or in consequence of an accident thereto which he had no reason to apprehend, the apparatus gives way, and damage to property below ensues; or suppose, further, that by reason of some negligence in the manner of introducing the Croton water into the building now in question, one of the pipes had burst on the second story, occasioning the injury which is complained of in this suit, could it have been for a moment claimed, that because the defendants were in the use of the water passing through the pipe, they are liable, if not guilty of negligence themselves._

The owner of the building stands in a different position. But even the owner is not held responsible, as upon an *undertaking* that his building is sufficient for the purposes for which it is let to his tenant; (see *Hart* v. *Windsor*, 12 Mees. & Wel. 68; *Sutton* v. *Temple*, 12 Id. 52; Archb. L. & T. 67, 158; *Clevis* v. *Willoughby*, 7 Hill, 86, and cases cited;) and if he be not liable upon an undertaking of that kind, in respect of the premises let to the tenant, he clearly is not in respect of a portion of the premises not included in the lease. As owner of the freehold, he is liable for injuries resulting from the condition of the freehold itself, caused by his own negligence, whether in his actual occupation or not; and if he have let to another, with covenants to repair, he has been held liable to any third person for injuries resulting from his neglect to repair. If he build the upper portion of his house so negligently that it fall, he is liable for his negligence to whomsoever may suffer injury thereby; and if he let a part of a building to one, and by reason of his own negligence in the construction of other portions of the same building, the tenant sustain an injury, the owner is liable. And in this view, if the owner let to one the first floor, and by reason of his negligent introduction of an insufficient fixture on the second or any other floor, whether in the actual occupation of himself or of a second tenant, the tenant below suffers damage, he may have recourse to his landlord. Such tenant has undoubtedly a remedy, and the owner

cannot, by letting the lofts to another, divest himself of responsibility for his own negligence. As owner of the lofts, his relation to the tenant below is not unlike that of an adjoining proprietor. He is bound to use his property with a prudent regard to the rights of his neighbor; and if, in the construction of a house upon his own lot, his wall should fall, through his negligence, his responsibility is clear. And yet, if after such building is finished, and without defects discoverable on ordinary inspection, he should let the same to a tenant, in whose prudent and careful use the wall should fall on the adjoining house, it would hardly be claimed that the tenant, being himself free from any neglect, is liable for the consequences. Suppose the wall of a building having six stories, each in the occupation of a different tenant, to neither of whom any negligence could be imputed, were to fall by reason of its defective construction, and produce injury, either to a stranger or to the tenant of the basement; are all of the six tenants responsible? if so, to what extent? severally or jointly? Clearly, in my judgment, the owner is alone liable.

The rule, I apprehend, is this, negligence is the foundation of the action. If the injury result from the negligence of the owner, either in constructing or upholding the freehold, he is responsible; but is not, in general, responsible for the negligence of the tenant in the use of it. If it result from the negligence of the tenant, in any manner, *he* is liable. Both landlord and tenant may be liable for the same injury: the landlord for the negligent construction, and the tenant for the negligent use of the premises so negligently constructed.

But as between different tenants under a common landlord, the question is always one of negligence in *the use of the premises*. This negligence may consist in the careless use of well constructed apparatus, and it may as well consist in the use of apparatus, which the tenant knew, or had reason to know, was in a condition unfit for use. They are not under contract with each other, either expressed or implied, but their reciprocal obligations rest upon the duty which every man owes his neighbor, to employ at all times a prudent care in the exer-

cise of his own rights, that the rights of such neighbor may not be injured.

The cases cited by the respondent, in support of his views, rest upon a totally distinct principle, viz., that in those cases the defendant, by the nature of his contract with the plaintiff, came under an implied warranty. Thus, in *Bremner* v. *Williams*, 1 Carr & P. 414, which was an action against a stage coach proprietor, for an injury to a passenger, in consequence of the insufficient state of defendant's coach, the court say, every stage coach proprietor warrants the passengers that the coach is equal to the journey. And *Sharp* v. *Grey*, 9 Bing. 457, was a like case, and the court held the stage proprietor liable, although the defect in the coach was out of sight, and not discoverable upon ordinary examination. But even these cases do not hold such warranty to be absolute. They rest more properly upon the principle, that carriers of persons are bound to a very high degree of caution, where the lives and limbs of human beings are under their control—and should provide, as far as human care and foresight can go, for their safe conveyance. See Angell on Carriers, § 534, and onward. *Ingalls* v. *Bills*, 9 Met. p. 1.

No such principle is applicable to persons standing in the relation occupied by the parties to this suit, nor can I discover any case in which a tenant, being himself free from negligence, has been held liable for the defective construction of any part of the demised premises, even to a stranger, still less to another occupant under the same owner.

The case of *Payne* v. *Rogers*, 2 H. Bl. 350, cited as law in 3 Stephens N. P. 2360, holds, that if a landlord be, by the terms of his lease, bound to repair, the tenant is not liable to a stranger for injuries resulting from the want of necessary repairs. Whether that case, in the broad terms in which the proposition is stated be the law, it is not necessary in this case to say; but if no negligence can be imputed to the tenant, his mere possession ought not to subject him to an action.

In the cases of *Blunt* v. *Akin*, 15 Wend. 522, and *Waggoner* v. *Jermaine*, 3 Denio, 306, it is said, that for maintaining a

nuisance, a grantee in possession is liable as well as the grantor by whom the nuisance is erected, if the latter, by his covenants, is bound to uphold the occupier, or affirms the continuance of the nuisance. But in those cases, there was confessedly a known upholding of the nuisance in question; the question of negligence was in no wise involved; malfeasance, and not negligence, was the ground of the action. The relation of landlord and tenant was not shown to exist between the occupier and the erector. And the action was not by another tenant hiring a part of the premises *after* the erection of the nuisance upon another part.

I cannot resist the conviction, that in accordance with the doctrine in *Clark* v. *Foot*, 8 Johns. 329, the defendants were not liable unless they or their servants were guilty of negligence, and upon this ground a new trial must be ordered.

In regard to the duty of the plaintiffs themselves, and the claim by the defendants that they must be without fault, the charge of the judge was substantially correct. It is undoubtedly true, that if the negligence of the plaintiffs caused the injury, or concurred in producing the injury, they cannot recover. This, however, did not bind them to the utmost possible caution; they were bound to ordinary care and prudence only. In this respect, they must be without fault. And although the observation, that "if the jury should find that in the exercise of such care and prudence it was *obligatory* on the plaintiffs to shut off the water, they could not recover," may seem at first to refer the *legal duty* to the jury for their determination, yet accompanied as it was by the charge that the plaintiffs were bound to exercise ordinary care and prudence, it could not, I think, mislead them.

A new trial must be ordered. The costs of this appeal to abide the event of the suit.