Jordan *v.* Helwig *et al.*

# IN GENERAL TERM, 1873.

JOHN JORDAN *v.* CHARLES HELWIG ET AL., Appellants.

NUISANCE—*liability for*—
COMMON COUNCIL.

The Common Council cannot, by granting a building permit, thereby authorize the erection of a building, to the injury of person, or property.

One who erects a nuisance is liable for its continuance, as for a new nuisance, as long as it continues, and it is not in his power to release himself therefrom by granting it over to another.

So where one, who demises his property for the purpose of having it used in such a way as must prove offensive to others, may himself be treated as the author of the mischief.

One, who erects a nuisance, and afterwards parts with the real estate upon which it is located, either by conveyance with a warranty or covenant, that amounts to an affirmance of the nuisance, and a grant of its continuance; or leases it on terms by which he derives a benefit, or profit from its continuance, or leases his real estate, receiving rent therefor, and knowing, or having reason to believe, that the use of the property for the purpose for which it is leased will prove to be injurious to the property of others, or become a nuisance, will be liable to an action for an injury resulting therefrom.

Where the evidence shows the use for which a lumber kiln was erected, the use that had been made of it, and that the lessees thereof were intending to, and did continue to use it in the same way, and for the same purposes as formerly used by the lessor, the jury may reasonably infer that the lessor knew, or had reason to believe that the lessees would continue the use of it in the same place, and that such was their object in leasing the premises, and that if the use of the kiln, at that place, was inherently dangerous, they might find against the lessor, for he could not relieve himself from liability by leasing the real estate, and not making any agreement, covenant, or guaranty to uphold them in the use of the kiln.

*Harvey—Porter, Harrison & Hines,* for appellant.
*Taylor, Rand & Taylor,* for appellee.

BLAIR, J.—The plaintiff, in his amended complaint, alleges that he is the owner of certain lots in the city of Indianapolis, having certain buildings thereon, and that the defendant is the owner of certain other lots immediately adjoining those of the plaintiff, and separated therefrom only by an alley fifteen feet wide ; that the defendant, Helwig, over the protest of the plaintiff erected thereon, about the 24th day of May, 1869, a wooden tenement, or building commonly called a dry kiln, to be used for drying and seasoning lumber, with a furnace therein, wherein to burn fuel,

heat the building, and dry lumber, Helwig knowing its dangerous character, and its liability, because of the quality of the material of which it was built, and the manner of its construction, and use; to take fire, and burn up, and thus destroy the buildings of the plaintiff; that Helwig for a time used and operated the same for the purpose of drying lumber, and then leased the same to his co-defendant, to be used for the same purpose and in the same manner, well knowing the danger of using the same, and how liable the use of the same was, to result in injury to the plaintiff; that his co-defendant took possession of and used the premises, and the use, and operation of such building as a kiln for seasoning and drying lumber at the place where located rendered it a nuisance, and dangerous to the plaintiff, and that on the 27th day of July, 1870, it took fire, and was destroyed, and the flames, and sparks therefrom fired the plaintiff's buildings, and caused them to burn; wherefore, the plaintiff seeks to recover, &c.

The defendant answered in five paragraphs:

The first was a general denial.

The second paragraph was that the building was erected in pursuance of a permit from the Common Council of the city of Indianapolis; that it was erected in a skillful, and workmanlike manner, for the purpose it was intended for; that while he had any connection therewith it was conducted and carried on in a careful, and lawful manner; that in October, 1870, long before the injury complained of accrued, he sold all his right in the building to Jackson & Rider, from whom it passed to his co-defendant, the Indianapolis Chair Company, and afterward, in May, 1870, he leased the ground to the Chair Company, since which he has had no interest in the building, its management, nor the work carried on therein, nor control over the same in any way.

The third paragraph omits the averments in regard to the permit, but otherwise is substantially the same as the second.

The fourth paragraph avers that the plaintiff well knew the premises, and the trade, and the business to be carried on therein, and with such knowledge allowed the same to be erected, and concludes with the same averments as to the transfer of property.

The fifth paragraph is that the defendant, Helwig, long before the burning complained of, ceased to have any interest in the premises, and that the fire complained of did not originate in said building, but was caused by the negligence and carelessness of the plaintiff and his employees, whilst at work on the plaintiff's premises.

Demurrers were sustained to each paragraph of answer, except the first. These rulings are assigned as errors.

The City Council could not, by granting a permit, have authorized the defendant, Helwig, to erect a building so a to injure the plaintiff, or his property. The building permit would not authorize the erection of a nuisance. Hence that portion of the first paragraph, alleging that the building was erected in pursuance of a permit, may be regarded as surplusage, and adds nothing to the force of the other allegations in the paragraph. The third paragraph is substantially the same as the second; it contains no facts save those that might be proved under the second.

The averments of the fourth paragraph, that the plaintiff knowing the premises, and the business to be carried on in the building, allowed it to be erected, constitute no defense. He was not obliged to resort to an application for an injunction, or failing to do so, lose his right of action, if damages ensued from the act of the defendant.

The fifth paragraph contains no facts, except such as might be proved under the general issue.

The second paragraph sets up facts showing that prior to,

and at time of the fire, the defendant, Helwig, had parted with his property in the kiln, and afterwards leased the real estate upon which it was erected.   If the demurrer was well taken to this paragraph, there was no error in sustaining it to the 3d, 4th, and 5th ; and if the second paragraph was good, there would be no error for which we could reverse the case, on account of the demurrers having been sustained to the other paragraphs ; for the same evidence might be intro- duced in support of the second, that would have been admis- sible under either of the others.

The cause was tried, resulting in a verdict against the defendant, Helwig, from which he appeals.   There is no dispute as to the material facts in the case, and the errors assigned upon the rulings on demurrers, and for giving, and refusing instructions, all raise but one and the same question·

The buildings of the plaintiff were located as stated in his complaint.   Immediately across the alley, fifteen feet wide, the kiln was constructed.   It was erected on the real estate of Helwig, and was originally built by himself, and one Jackson, and one Rider, who were at the time partners in the business of manufacturing furniture, and was built for the use of the partnership for manufacturing purposes, and belonged to the firm ; other parts of the same lots on which the kiln stood, were used as a lumber yard by the firm.   The kiln was built in May, 1869.   In September, 1869, the partnership was dissolved, and Jackson & Rider con- tinued to carry on the business, and became the owners of the kiln by the terms of the dissolution, and Helwig leased them the lots on which the kiln was located, for a term of three years, reserving rent therefor.   The lease merely describes the real estate, and adds, " together with the rights, privileges, and appertenances thereunto belonging, to have, and to hold the same, for and during the term of three years," &c.

The premises, including the kiln, were in the possession of,

and used by Jackson & Rider at the time of the fire.  Helwig, at the time he sold his interest in the partnership property, including his interest in the kiln, leased the real estate on which the kiln stood, to Jackson & Rider.

The property in the kiln passed, by the terms of the dissolution of partnership, and the division of the partnership property, to Jackson & Rider, as other personal property of the firm passed, and not as real estate, or an interest in real estate.  The mere structure itself was not a nuisance, nor is it claimed to be such by the complaint.

It is alleged that the use and operation of it as a kiln for seasoning and drying lumber, at the place where it was located, rendered it dangerous to the property of the plaintiff.  Without fire in it, without its use for the purpose for which it was erected, it was harmless.  It was used for the purpose for which it was erected, for some fourteen months without harm to the plaintiff.  From May, 1869, to September 21st, 1869, the defendant, Helwig, had an interest in the kiln, and as a partner, derived profit from its use.  After the 21st day of September, 1869, until the time of the fire on the 27th of July, 1870, a period of over ten months, it was used for the same purpose by Jackson & Rider, or their assignee, the Chair Company, without any injury resulting to the plaintiff.

After the defendant, Helwig, had parted with his interest in it, according to the terms of the dissolution of the partnership, and his lease of the real estate on which it stood, was he liable for damages resulting to the plaintiff?  This is the real question in the case.

It is a general rule that one who creates a nuisance, is liable for its continuance, as for a new nuisance, as long as it is continued, and it is not in his power to release himself therefrom by granting it over to another.

The first case cited in support of the claim of the plaintiff,

is that of *Roswell* v. *Prior*, 12 *Mod.*, 635; also, reported in 1 *Lord Raymond*, 713, and 2 *Salk.*, 460. This was an action for the obstruction of ancient lights. The lights were obstructed by the erection of a building adjacent to that of the plaintiff. The defendant, after the erection of the building, had leased the same, reserving rent therefor; and on the ground that he had thereby agreed that the obstruction should continue, he was held liable.

The next is that of *Rich* v. *Basterfield*, 56 *Eng. Com. Law*, 783. This was an action arising from smoke and noxious gasses, emanating from low buildings, and chimneys attached thereto, and entering the dwelling of the plaintiff. The buildings erected by the defendant were let as shops, for what purpose is not disclosed, but the smoke passed into the house of the plaintiff. The defendant had leased the shops from week to week, and they were in possession of the tenant at the time of the injury complained of. It was shown that the premises had been used without injury to the plaintiff by a former tenant, and as the injury resulted from the use of the premises by the tenant occupying the shops, the landlord only being chargeable with having erected them, and by leasing them, enabled the tenant to make fires if he chose, but the landlord not being under any obligation to uphold the tenant in the use of the premises as he did use them, he was held not liable. The premises were capable of being used without injury to any one, and there is nothing in the case as reported to show that the landlord had any knowledge, or reason to believe, that they would be used so as to become a nuisance.

The Court says, "the utmost that can be imputed to the defendant, is, that he enabled the tenant to make fires if he pleased," and in commenting upon the case of the *King* v. *Pedley*, 1 *Ad. & E.*, 822, the Court says, "if it is to be taken as a decision that the landlord is responsible for the act of

his tenant in creating a nuisance by the manner in which he uses the premises demised, we think it goes beyond the principle to be found in any previously decided cases; and we cannot assent to it."

In the case of *Fish* v. *Dodge*, 4 *Denio*, 311, the plaintiff occupied a dwelling-house, and kept boarders. The defendant owned a blacksmith shop adjoining, and rented a part of it to be used in finishing steam boilers, and the use of it for that purpose disturbed the plaintiff and her boarders. There was no partition in the shop, and the defendant also carried on his business in the shop at the same time, his workmen, and those making boilers working part of the time at the same forge, and the defendant all the time carrying the key, and controling the shop. After commenting upon certain cases, and announcing the general rule to be, as already stated, the Court used the following language: " But none of the cases go far enough to aid the plaintiff, unless the defendant can be regarded as the author of the nuisance. He did not manufacture the engine boilers, nor were they made for him. But the jury have found that he let the shop for the purpose of having the boilers manufactured there; and if he knew that it would prove a nuisance to the plaintiff, I think the action may be sustained." One who demsies his property for the purpose of having it used in such a way as must prove offensive to others, may himself be treated as the author of the mischief. It was, therefore, held in that case, that the defendant was not liable, unless he knew, or had reason to believe, that he was letting the shop for a use which must prove injurious to the plaintiff.

The case of *Wagoner* v. *Jermaine*, 3 *Denio*, 306, was an action on the case for overflowing lands of the plaintiff. The dam which caused the overflow, was erected long before the action was brought, but was raised by the defendant some four years prior to the bringing of the action, and after it

was raised, the premises on which it was located were conveyed by the defendant; the conveyance contains covenants of seizin and warranty, and also a clause giving the grantees the right to flow the lands of the grantor "to high water mark, and as far as has hitherto been necessary for the use of the mills on the premises above conveyed, the dam remaining at its present height."

It was held that the action could be maintained, because the covenants in the deed made by the defendant were an affirmance of the nuisance in possession of the grantee. Before that, the case of Blunt v. Aiken, 15 Wend., 522, had been decided, in which it was held (it also being an action for overflowing lands by a mill dam) that an action on the case for flowing lands will not lie against a former owner of land who erected the dam and built a mill, by means of which the injury was done, where it appears that other persons are in possession of the premises, occupying them as their own, and there is no evidence that they hold as tenants of such former owner. The action must be against the person in possession.

In the case of Wagoner v. Jermaine, the Court in commenting upon the case of Blunt v. Aiken, uses the following language: "The principle, however, is recognized, and sanctioned by the reasoning in that case, that where the defendant is out of possession at the time the injury was committed, and another person has the entire possession, if he was the erector of the nuisance and owner of the premises, and under some agreement with the possessor by which he was bound to uphold him in possession, the action would well lie against him, on the ground that he, by such relation with the occupier, had affirmed the continuance of the nuisance, that it might be said to be a continuance by himself."

It will be seen from an examination of the foregoing cases, that the principle upon which an action is maintained against

13

one who erects a nuisance, but who has afterwards parted with the real estate on which it is located, is that he has conveyed it with a warranty, or covenant, that amounts to an affirmance of the nuisance, and a grant of its continuance, or has leased it on terms by which he derives a benefit, or profit, from its continuance ; or leases his real estate, receiving rent therefor, and knowing, or having reason to believe, that the use of the property for the purpose for which it is leased, will prove to be injurious to the property of others, or become a nuisance.

The case of *Hanse* v. *Cowing*, 1 *Lansing*, 288, is cited by the defendant. This was also a case for the flowing of water caused by a dam, or embankment. Evidence was introduced showing, that the premises had been conveyed by the defendant, who had erected the dam, or embankment, and it was held competent for the purpose of showing that he was not liable for a continuance of the nuisance. The following language is used by the Court on this point. " The general proposition is undoubted, that one who creates a nuisance is liable for its continuance, as for a new nuisance, so long as it continues, but the proposition is not unqualifiedly true. To remain liable, he must in fact own, or possess the premises on which the nuisance is created, or must derive some benefit from its continuance." It is said, further, that " the deed, to bind the party who erects the nuisance should warrant the continued enjoyment of the nuisance itself, or what creates the nuisance as used at that time."

In the case at bar, the kiln was not a part of the real estate, it was erected for manufacturing purposes, and was never owned by Mr. Helwig, except as a member of a partnership. Before the injury occurred, he parted with his entire interest in it; he owned the real estate on which it was erected, and leased it to his former partners, who were then the owners of the kiln. There is nothing in the lease, in evidence, that

binds Helwig to maintain them in the use of the kiln, nor can it be said that he, after parting with his property in it, derived any benefit from its use, except as he received the rent stipulated for the use of his real estate.

If the use of the kiln, at the place where it was located, was as alleged in the complaint, inherently dangerous to the property of the plaintiff, and the defendant with such knowledge sold his property in the kiln to Jackson & Rider, his former partners, and leased them the real estate, reserving rent therefor, knowing, or having reason to believe, that they would continue to use the premises as a location for the kiln, and knowing, or having reason to believe, that they would continue the use of the kiln for the purpose for which it was erected, and as it had been used before, the case is within the rule laid down in numerous cases, and particularly that of *Fish* v. *Dodge, supra,* and the defendant would, in such case, be liable.

The second paragraph of the answer does not (nor do any of the other paragraphs) negative these averments of the complaint, or avoid them. The lease of the real estate by Helwig, was introduced in evidence, and also testimony as to the sale of his interest in the kiln to Jackson & Rider; and, in fact, there does not seem to have been any evidence that would have been admissible under the second paragraph of answer, excluded from the consideration of the jury. The first, second, and third instructions, given by the Court, to the giving of which the defendant excepted, are in harmony with the rules of law as before stated, and are unobjectionable.

The fourth, fifth, sixth, and seventh instructions, asked by the defendant, and refused by the Court, and to which refusal the defendant excepted, ignored the rule as we have given it, and sought to release the defendant from liability, on the ground of his having parted with his property in the kiln,

and leased the premises without any covenant or guaranty, to uphold the lessees in the continued use of the same. If he knew the kiln was inherently dangerous, and knew, or had reason to believe, that the lessees would continue the use of it in the same place, he could not relieve himself from liability by leasing the real estate, and not making any agreement, covenant, or guaranty, to uphold them in the use of the kiln.

The instructions given, fairly submitted these questions to the jury, and as the evidence showed the use for which the kiln was erected, the use that had been made of it, and that the lessees were intending to, and did continue the same use, the jury might reasonably infer that Helwig knew, or had reason to believe, that the lessees would continue the use of it in the same place, and that such was their object in leasing the premises ; and if the use of the kiln at that place was inherently dangerous, they might find for the plaintiff; and as they did so find in accordance with the instructions, we cannot disturb the verdict.

We discover no error in refusing the instructions asked.

Judgment affirmed.