### NATHAN PLUMER vs. JOHN S. HARPER.

*A.* erected a dam across a stream, upon his own land, which caused the water to overflow the land of *B.*, and then conveyed the land, on which the dam was erected, to *C.*, who permitted the dam to remain; it was held, that *A.* was liable for any damage resulting from the continuance of the dam, even after he had conveyed the land, on which it stood.

THIS was an action of the case for maintaining and continuing a dam across the Pemigewasset brook, from July 8, 1821, to August 6, 1822, whereby the plaintiff's land was covered with water, and injured.

The cause was tried here at September term, 1823, upon the general issue; when it appeared in evidence, that the defendant, in 1818, erected a dam across the Pemigewasset brook, which caused the water to overflow the plaintiff's land, and injure his grass and trees. But it appeared, that the defendant, on the 23d November, 1820, by deed, conveyed to one *John Harper* the dam and the land, on which it stood; and the said *John Harper* has ever since been in possession. Since the said conveyance, however, the defendant has at times occupied the mills, connected with the dam, under said *J. Harper*; and he occupied them between the 8th July, 1821, and August 6, 1822.

A verdict was taken for the plaintiff, subject to the opinion of the court upon the above case.

*Walker,* for the plaintiff.

*Lyford,* for the defendant, contended, that the verdict should be set aside, and a general verdict and judgment be entered for the defendant.

The deed to *John Harper* conveys the premises, including the dam in question, in fee simple, without condition, trust, or reservation.

The defendant would be guilty of trespass, should he enter and destroy this dam. 3 *Salk.* 248. There is no case, where an action has been supported against any person, save the owner of the property, or the person in possession, for a nuisance. And the case in *Salk.* 460, is the only one, where case has been supported against the owner *out* of possession. On this decision, *Chitty* builds his doctrine, and extends it further than the authority warrants. 1 *Chit. Pl.* 77.

This case is also cited, 1 *Bos. & Pul.* 404, where *Heath*, J., says, "the ground of the decision having been, that the "defendant was benefitted by the nuisance complained of." In this case, the defendant is not benefitted.

Case is substituted for the ancient actions of *quod permittat*, and *assize of nuisance*, and the defendant contends that the name alone, and not the law, is changed. If so, then the parties must be both freeholders, as those were in the nature of real actions. This action, being now the sole remedy, is brought by persons in possession, against persons in possession, without reference to their interests. 3 *Black. Com.* 222.

The defendant is charged with continuing this dam; and it does not appear, that it has been continued by his acts, agency, or knowledge. He had parted with his title, and possession, nearly two years before the commencement of this suit. There is a wide distinction between a lessee, and a grantee in fee simple. In the one case, the defendant may be master, and therefore liable for the acts of the person in possession; but in the other, there is no relation of master and servant, or landlord and tenant.

The *assize of nuisance* could not be maintained against the defendant, nor could an action of *quod permittat*, for reasons before assigned. They would lie against the *alienee*, either of them. So are the authorities in the old books, especially in 9 *Coke's Rep.* 53. There are numerous cases, where the grantee has maintained an action for continuing a nuisance erected in the time of his grantor. Such was the case in *Croke Eliz.* 402.—5 *Coke's Rep.* 101.

The *owner* of property has also been holden liable for acts of his servants, though he was out of actual possession. 1 *Bos. & Pul.* 404.—6 *T. R.* 441.

But all those cases are unlike the present, and it is believed, predicated on different principles.

RICHARDSON, C. J., delivered the opinion of the court.

It is contended, on the part of the defendant, in this case, that he is not liable for the injury, of which the plaintiff complains, because, previous to the time mentioned in the declaration, he conveyed the land, upon which the nuisance had been erected, to a third person ; and so the continuance of the nuisance must be deemed, not his act, but the act of such third person ; and the question is, whether the defendant is liable for the continuance of the nuisance, after having parted with his title to the land ?

He, who is injured by a nuisance, may enter and abate it, or he may have redress by an action. 9 *Coke* 53, *Baten's case.*—5 *ditto* 101, *Penruddock's case.*—2 *Salk.* 459, *Rex vs. Rosewell.*

In ancient times, the remedy by action, for a nuisance, was a *quod permittat*, or an assize of nuisance. In both those actions, the plaintiff had judgment, not only for his damages, but for the abatement of the nuisance. 9 *Coke* 53, *Baten's case.*

But, at the common law, an assize of nuisance was held to lie only against him, who erected the nuisance, and not against him, to whom the tenement had been transferred. The reason assigned for this was, that there was not found in the register any form of writ, in which it was not supposed, that the tenant erected the nuisance. This defect was remedied by the statute of Westminster 2, *cap.* 24, which made him liable, to whom the person, erecting the nuisance, had conveyed the tenement. This statute was construed to give an assize against him who erected, and him who continued, a nuisance, jointly ; and the form of the writ is given in *Baten's case*, 9 *Coke* 53. It is therefore clear, that in *Lord Coke's* time it was held, that he, who erected a nuisance, and then conveyed the tenement, remained liable after the conveyance, for any damage resulting from the continuance of the nuisance.

In the reign of *Queen Elizabeth*, the *quod permittat* and assize began to go out of use, and an action on the case to be brought for a nuisance ; and in the 36th year of that reign,

the case of *Beswick vs. Combden* was decided in the King's bench. *Moor* 353.—*Croke Eliz.* 402. The facts are stated differently by the two reporters. It was an action on the case, and *Croke* says, that the defendant erected the dam, which caused the water to overflow the land of *J. S.*, who enfeoffed the plaintiff; and the question was, whether the feoffee could maintain case for the continuance of the nuisance? But *Moor* says, that the nuisance was erected by one, who enfeoffed the defendant, and that the question was, whether the feoffee was liable in case for the continuance of a nuisance? Whatever the facts may have been, both *Croke* and *Moor* agree, that the plaintiff had judgment. But two years afterwards, in the case of *Beswick vs. Cumden,* in the court of common pleas, which was an action on the case for the continuance of a nuisance, the action was held not to lie; because the proper action was an assize, or a *quod permittat,* and not case; and because the defendant could not be liable for permitting a nuisance to continue.

*Penruddock's case,* (5 *Coke* 101,) was a *quod permittat* in the common pleas, brought by the grantee of him, to whose prejudice the nuisance was originally erected, against the grantee of him, who first erected the nuisance; and the question was, whether the defendant was liable; and it was held, that he was, he having continued the nuisance after he had been requested to abate it.

Notwithstanding the decision of the common pleas, case seems after this time to have maintained its ground, and the other two remedies to have gone wholly out of use. The case of *Ryppon vs. Bowles,* (*Croke James* 373,) was an action on the case. The facts were, that one *Thomas Henson* erected a building, by which the plaintiff's window was darkened. Afterwards *Bowles,* the defendant, being in possession, the plaintiff brought an action against him, for continuing the nuisance. *Coke, C. J.,* inclined to the opinion, that the defendant was not liable; but all the court held, that he, who erected the nuisance, was liable.

In *Brent vs. Haddon,* (*Cro. James* 555,) the case was, that one *Quarles* had a mill, and erected a dam, which caused the water to overflow the plaintiff's land; *Quarles* leased the

Plumer
*vs.*
Harper.

mill to *Haddon*, against whom the plaintiff brought his action, for continuing the nuisance ; and *Haddon* was held to be liable.

In *Rosewell vs. Prior*, (2 *Salk.* 460.—1 *L. Raym.* 713) it was decided, that where a tenant for years erected a nuisance, for which an action was brought against him, and a recovery had, and he then underlet to another, an action might still be maintained against him who erected it, for the continuance of the nuisance.

Upon an examination of the cases bearing upon the question now to be decided, it will be found, that, although in the lapse of time, the form of action has entirely changed, yet the books indicate no change in the liability of the wrong doers. No case is to be found, in which it has been doubted, that he, who erects a nuisance, continues liable as long as the nuisance continues. But it has often been made a question, how far, and under what circumstances, he, who adopted the acts of the original wrong doer, shall be liable.

If the question, which this case presents, were now to be decided for the first time, it seems to us, that it would be very difficult to find a good reason, why the original wrong doer should be discharged by conveying the land. The injury has no connection with the ownership of the land. If *A.* enter into the land of *B.* and there erect a dam, which causes the water to overflow *B.'s* land, there can be no doubt, that he will be liable for any damage resulting from such overflowing. So if *A.* enters *B.'s* land, and there erects a nuisance to the prejudice of *C.*, it is clear, that *A.* will be liable to *C.* When he who erects the nuisance conveys the land, he does not transfer the liability to his grantee. For it is agreed, in all the books, that the grantee is not liable, until, upon request, he refuses to remove the nuisance. It does not make the original act less injurious, because the grantee adopts it ; and we are not aware, that in any action against an individual for a tort, it can be a good defence to shew, that a third person has assented to the wrong, and thus become liable.

We are therefore of opinion, that the objection, which has been raised in this case, cannot prevail, and that there must be

*Judgment on the verdict.*