Brady *v.* Weeks.

3   157
67h  58
3b 157
30ap 68
3b   157
172 NY³ 14

SAME TERM.    *Before the same Justice.*

BRADY and others *vs.* WEEKS and others.

To render a trade or business a nuisance, it is not necessary that it should endanger the health of the neighborhood. It is sufficient if it produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable.

The occupation of a building in a city, as a slaughter house, is *prima facie* a nuisance to persons residing in the neighborhood; and may be restrained by injunction, notwithstanding the denial of the defendant, in his answer, that it is a nuisance.

A subsequent purchaser of premises injured by a nuisance erected previous to his purchase, has a remedy for the injury sustained by him from the continuance of the nuisance; upon the principle that the continuation thereof is regarded as a new nuisance.

Where a nuisance is a common, although not a joint injury, to several persons residing in the neighborhood, they may unite as plaintiffs in a bill to restrain the nuisance.

But if the bill filed for that purpose, in addition to the prayer to restrain the nuisance, contains a prayer that the defendants may be decreed to pay the plaintiffs, respectively, the damages which they have sustained by the nuisance, it will be multifarious.

That objection may be obviated, however, by striking out of the bill, that part of the prayer which asks for the payment of damages.

Against whom a bill to restrain a nuisance should be filed.

THIS was an application for an injunction, founded upon the bill filed in the suit, to restrain the defendants from occupying a building erected by the defendant Weeks on the north side of Twelfth-street, between the Fifth and Sixth Avenues, in the

Brady *v.* Weeks.

city of New-York, as a slaughter house, and from slaughtering any animals in such building, or from permitting the building to be used as a slaughter house. The bill was filed by several owners of dwelling houses in the neighborhood of the slaughter house; who alleged therein, that the slaughter house was a nuisance to them and their dwellings. The bill stated that the slaughter house was erected by the defendant Weeks about ten or fourteen years since, and when there were very few dwelling houses in its immediate neighborhood; that within the last three or four years the dwelling houses of the plaintiffs had been erected; that during the time the dwelling houses of four of the plaintiffs were being erected, and for some time previous thereto, the slaughter house stood empty and unoccupied; and that the defendant Weeks, in May, 1845, rented the slaughter house to the defendant Sarles, a butcher, and that Sarles underlet it to the defendant Bookstaver, who is now using it as a slaughter house. The defendants' affidavits showed that Weeks let the slaughter house a second time to Sarles, for one year from the 1st of May, 1848; and that Sarles assigned the lease, or under-let the premises to Bookstaver; and that Bookstaver had underlet a part of the building to one Crist. Bookstaver insisted, in his affidavit, that since the introduction of Croton water, the slaughter house had been kept perfectly clean, and that no offensive smell, which could be avoided, proceeded therefrom. The bill alleged that the great increase of trade and population in the city of New-York had compelled a large class of the citizens to abandon their former dwellings in the lower part of the city, and convert them into stores and places of business, and to seek residences for themselves and their families in the upper part of the city. The bill prayed that the defendants might be restrained from using the building erected by Weeks as a slaughter house, and that they might be decreed to pay the plaintiffs, respectively, the damages they had sustained by the nuisance.

*W. H. Bell & F. A. Coe*, for the plaintiffs.

Brady *v.* Weeks.

PAIGE, J.  In the case of *Catlin and others* v. *Valentine*, (9 *Paige*, 575,) the chancellor held, that the occupation of a building in a city, as a slaughter house, was *prima facie* a nuisance to the neighboring inhabitants, and might be restrained by injunction.  And in that case he refused to dissolve the injunction, and retained it until the hearing ; although the defendant, in his answer, denied that a slaughter house was a nuisance. To constitute a nuisance, it is not necessary that the noxious trade or business should endanger the health of the neighborhood.  It is sufficient if it produces that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable.  (9 *Paige*, 576.  *Rex* v. *White*, 1 *Bur.* 337.  3 *Black. Com.* 217.)  The slaughter house in question is to be regarded as *prima facie* a nuisance to the plaintiffs, notwithstanding the qualified denial of the defendant Bookstaver that it is a nuisance.

The only serious question which the case presents is, whether the plaintiffs, having, after the erection of the nuisance, built their dwelling houses beside it, are entitled to any relief.  When the slaughter house was erected, it was remote from the thickly settled parts of the city; but it seems that the city has now grown up to it, and that the necessities of the population require the occupation of the lots in the immediate vicinity of the slaughter house, for dwellings.  When the slaughter house was erected, it incommoded no one ; but now it interferes with the enjoyment of life and property, and tends to deprive the plaintiffs of the use and benefit of their dwellings.  There can be no real necessity for conducting such an offensive business as slaughtering cattle in this part of the city, which is now occupied by valuable and costly buildings.  As the city extends, such nuisances should be removed to the vacant ground beyond the immediate neighborhood of the residences of the citizens. This, public policy, as well as the health and comfort of the population of the city, demand.  And it seems that whenever any offensive trade becomes an injurious nuisance to any person, such person has a remedy by an action on the case for damages, or by writ of nuisance to have the nuisance abated ;

upon the principle that every continuance of a nuisance is a new or fresh nuisance. (2 *R. S.* 332. *Westbourn* v. *Mordant, Cro. Eliz.* 191. 1 *Leonard,* 103. *Penruddock's case,* 5 *Coke,* 101. 3 *Bl. Com.* 220. *Staple* v. *Spring,* 10 *Mass.* 74. *Alexander* v. *Kerr,* 2 *Rawle,* 83.)

In *Westbourn* v. *Mordant,* the action was case for stopping a stream of water. A motion was made in arrest of judgment, because the nuisance was erected before the plaintiff's title commenced. The court held that the action lay. Gawdy, J., said : "It is not material when the nuisance was erected, for he that is hurt by it shall have an action." It is conceded by Savage, Ch. J., in *Blunt* v. *Akin,* (15 *Wend.* 526,) that a subsequent purchaser of premises injured by a nuisance erected previous to his purchase, has a remedy for the injury sustained from the continuance of the nuisance. And in *Bewick* v. *Cunder,* ( *Cro. Eliz.* 402,) it was held that an action on the case would lie for damages from a dam erected by the defendant in the time of the grantor of the plaintiff. In *Penruddock's case,* (5 *Coke,* 101,) a writ of *quod permittat prosternere* was brought by the feoffee of a house injured by a nuisance, against the feoffee of the erector of the nuisance ; and it was held that the writ lay against either the erector of the nuisance or his feoffee. A continuation of the nuisance is regarded as a new nuisance. It is this principle which gives a party who builds on his own property beside a nuisance, previously erected, a right to have the nuisance abated.

If the defendants desire to contest the question whether their slaughter house is a nuisance, they will have a right to do so, upon the final hearing. As the nuisance in question is a common, although not a joint, injury to the plaintiffs, they have properly united as plaintiffs in the bill to restrain the nuisance. (*Murray* v. *Hay,* 1 *Barb. Ch. Rep.* 59.)

But the bill is rendered multifarious by inserting therein, in addition to the prayer to restrain the nuisance, a prayer that the defendants be decreed to pay the plaintiffs, respectively, the damages which they have sustained by the nuisance. This objection, however, may be obviated by striking out that part

of the prayer which asks for payment of damages. (1 *Barb. Ch. Rep.* 65.)

It is objected that the bill has been improperly filed against Weeks and Sarles, because Weeks does not himself occupy the slaughter house, and because Sarles has parted with all his interest in it. Weeks is unquestionably a proper party. He is the owner of the building. He originally erected it, to be used as a slaughter house. He leased it to Sarles, a butcher, with the knowledge that Sarles intended to carry on the business of slaughtering in it. The revised statutes (*2d vol.* 332) provide that a writ of nuisance may be brought as well against the party who erected a nuisance, as against his transferee. And such writ goes against both jointly. The writ of nuisance given by the act of West. 2, 13 Ed. 1, c. 24, went also against the erector of the nuisance, and his alienee jointly. (3 *Bl. Com.* 221. 9 *Coke,* 53. *Plumer* v. *Harper,* 3 *N. H. Rep.* 88.) And whenever the erector of a nuisance owns the premises on which the nuisance is erected, and lets the premises to another, an action on the case will lie against him, for the injury the nuisance occasions, while the premises are in the occupation of his lessee. The demise in such case affirms the continuance of the nuisance, and it may be said to be a continuance of the nuisance by the lessor. (*Rosewell* v. *Prior, Ray.* 713. *S. C.* 2 *Salk.* 460. *Cheetham* v. *Hampson,* 4 *T. R.* 320, *per Buller, J.* 15 *Wend.* 526.) The same principle was, in the recent case of *Waggoner* v. *Jermaine,* (3 *Denio,* 310,) held applicable to the erector of a nuisance who conveys the premises to a purchaser with warranty. (*Plumer* v. *Harper,* (3 *N. Hamp.* 88.) An action also lies against the lessee or grantee of the erector of the nuisance, for the injury occasioned by the continuance of the nuisance by them. (*Brent* v. *Haddon, Cro. Jac.* 555. *Rosewell* v. *Prior, Ray.* 713. *Penruddock's case,* 5 *Coke,* 101. *Staple* v. *Spring,* 10 *Mass. Rep.* 74. *Alexander* v. *Kerr,* 2 *Rawle,* 83.)

If Sarles sublet to Bookstaver, reserving rent to himself, or transferred to him with covenants for quiet enjoyment, he comes within the principle of the cases of *Rosewell* v. *Prior,* (*Raym.*

713,) and *Waggoner* v. *Jermaine,* (3 *Denio,* 310,) and is liable in an action on the case to the plaintiffs for the injury sustained by them during the occupation of Bookstaver. If, however, Sarles assigned his entire interest in the lease to Bookstaver, without reserving rent, and without any covenants for quiet enjoyment, he cannot, by the decision in the case of *Blunt* v. *Aiken,* (15 *Wend.* 522,) be held liable to the plaintiffs for any injury sustained by them since his sale to Bookstaver. And in that case, as he would have no interest in the premises, and had not affirmed the continuance of the nuisance, or participated in its continuance, he could not be a proper party to the bill. If Crist has an interest in the slaughter house, as the sub-lessee of Bookstaver, he ought to be made a party.

An order must be entered allowing an injunction to issue restraining the defendants from slaughtering animals in the slaughter house mentioned in the bill; or from using the same as a slaughter house ; or from permitting it to be used as such. And the plaintiffs are at liberty to amend their bill by striking out that part of the prayer which relates to the payment of damages.

