## NEW–YORK COMMON PLEAS.

### THE FIRE DEPARTMENT agt. JOSEPH HARRISON.

An action brought to recover penalties incurred by the erection of buildings in violation of the fire laws (*Sess. Laws*, 1849, *p.* 118), and for the judgment of the court, in accordance with the provisions of the statute, that the several buildings be taken down and removed (as a common nuisance), is an action where the *trial by jury is absolute*, and cannot be denied. There is nothing in such a case which necessarily forms the grounds of equity jurisdiction.

And such an action, if determined on the judgment asked, was not one in use when the constitution of 1846 was adopted, nor was the provision violated contained in any statute in existence at that time. But regarded as an action at law to recover a penalty, or to remove a nuisance, is an addition to a class of offences and actions well known and defined, and in which the mode of trial was by jury, and was well known and in use prior to the constitution of 1846.

*General Term, June,* 1859.

THIS action was brought to recover penalties incurred by the erection of four buildings in violation of the fire laws particularly designated in the complaint, and for the judgment of the court, in accordance with the provisions of the statute, that the several houses be taken down and removed. When the cause was called at the special term, the plaintiff's counsel moved that it be tried by the court without a jury. The defendant's counsel claimed a trial by jury. The judge presiding decided that the action should be tried by the court without a jury, and the defendant excepted. This presents the first question on appeal.

By the court—BRADY, Judge. The Code (§ 253) provides that an issue of fact in an action for the recovery of money only, or of specific real or personal property, or for a divorce from the marriage contract, on the ground of adultery, must be tried by a jury, unless a jury trial be waived as provided in section 266, or a reference be ordered, as provided by sections 270, 271. Section 256 provides that

every other issue is triable by the court, which, however, may order the whole issue, or any specific question of fact involved therein, to be tried by a jury, and rule 69 of the supreme court in force when this action was tried, and which stated the practice under this section, declared that in cases where the trial of issues of fact was not provided for in section 253 of the Code, if either party should desire a trial by jury, such party should, within ten days after issue joined, give notice of a special motion to settle the issues, or might refer the settlement of them to a referee. This is not one of the class of cases to be tried by a jury specifically mentioned in section 253. It is not for the recovery of money only. It is to recover penalties, and for the removal of buildings erected in violation of law, and no application was made for a jury trial, in conformity with rule 69, *supra*. Unless, therefore, the constitutional right of trial by jury has been violated, the defendant was not entitled to a trial in that mode. The Constitution (§ 2, *art.* 1), adopted 1846, provides that the trial by jury, in all cases in which it has been heretofore used, shall remain inviolable forever. But that a jury trial may be waived by the parties, in all civil cases, in the manner to be prescribed by law. The Code (§ 266) provides that the trial by jury may be waived by the several parties to an issue of fact in all actions on contract, and with the assent of the court in other actions in the manner following :

1. By failing to appear at the trial.

2. By consent in person or by attorney, to be filed with the clerk, and

3. By oral consent in open court, and entered in the minutes.

The defendant having appeared at the trial, and not having consented thereto, the trial by jury was not waived in the manner prescribed by law, and it only remains to be considered, whether this action is one in which a trial by jury was in use prior to the Constitution of 1846. By the 26th section of the act for the more effectual prevention of fires in the city of New-York, &c., passed March 5, 1849 (*Laws of*

1849, *p.* 118), every dwelling-house, store, store-house, ash hole, ash house, shed, or other building of any description whatever mentioned before in that act, which shall be erected, built, roofed, repaired, altered, enlarged, built upon, or removed, contrary to any of the provisions of the act contained in the preceding sections, is declared to be a common nuisance ; and the justices of the supreme court, and justices of the court of oyer and terminer and general jail delivery, and the justices of the court of general sessions of the peace, within the city of New-York, have cognizance of the offence, and are empowered, upon conviction, to adjudge such fines and penalties as they, in their discretion, shall think fit and proper, and also, in their discretion, to cause such nuisances to be abated and removed. By the 30th section of the same act, the supreme court of the state of New-York, and the court of common pleas for the city and county of New-York, in addition to the power of enforcing the penalties provided by law, and by the act, for a violation of the provisions of the statute, are endowed with power to restrain by injunction on further erection of a building, in an action to be brought by the fire department, and to adjudge and decree that a building erected in violation of the statute shall be taken down and removed, the statute imposing only, as a preliminary to the exercise of this jurisdiction, that ten days' notice to remove the violation shall be given. The nuisance, it will thus be perceived, and the penalty and forfeiture incurred are declared by statute. The erections which the statute was designed to prevent would not be nuisances at common law, *per se,* and the consequences of a violation of the provisions of the law on the subject are those only which are prescribed. None of the acts of the legislature prior to the act of 1849, in terms, conferred power upon the courts in an action at law, not only to enforce the penalty, but to adjudge that the violation be taken down and removed or abated. Some of them contained a provision, declaring the violations a common nuisance, and authorized the courts on indictment and conviction to abate and remove them. (*Act, April* 9, 1813, § 60, 62, 73 ;

*Act, April* 11, 1855, § 2, 4, 5; *Act, April* 12, 1822, § 3, 4; *Act, April* 9, 1823, § 2; *Act, March* 21, 1827, § 2; *Act, May* 1, 1829, § 2; *Act, April* 20, 1830, § 17, 22; *Act, April* 30, 1839, § 8.)

This action, if determined on the judgment asked, was not one in use when the constitution of 1846 was adopted; nor was the provision violated contained in any statute in existence at that time. It is true that the common law remedy by writ of nuisance was retained, subject to the provisions of the statute. (2 *R. S.* 333, 2*d ed.*) In that proceeding, the jury, if the court so ordered, could view the premises; and if the plaintiff prevailed, the judgment followed that the nuisance be removed, and that he recover his damages. So in all actions founded upon damages resulting from a nuisance, the trial by jury prevailed. There was a distinction, however, between a common and a private nuisance. On account of the former, no action would lie by an individual, unless he suffered some extraordinary damage beyond the rest of the people, or some peculiar or special injury, in which case he should have a private satisfaction by action. (3 *Bl. Com.* 220; *Lansing* agt. *Smith*, 4 *Wend.* 9, *per* WALWORTH, J.; *Willard's Eq. Ju.* 389; *Penniman* agt. *N. Y. Balance Co.*, 13 *How. Pr. Rep.* 40; *Hecker* agt. *Same, id.* 549.)

The statute of 1849 is a remedial statute, in the nature of a police regulation, designed for the protection of life and property; and the penalties imposed for a violation of it are given to the fire department exclusively. The consequences of such violation may be highly penal. The accused, as we have seen, may be punished by fine and his property destroyed, when the proceeding is by indictment, and when by action the penalty may be recovered and the property destroyed. I do not think it necessary, in disposing of the exception taken, to consider how far it is affected by the constitutional provision that no person shall be deprived of his property without due process of law, because I think it may be disposed of on the first constitutional right or privilege suggested. It is said, by JOHNSON, J., in *Wynehamer* agt. *The People* (3 *Kern.* 426), in

The Fire Department agt. Harrison.

reference to the first part of Art. 1, § 2, of the Constitution,
viz. : " The trial by jury, in all cases in which it has hereto-
fore been used, shall remain inviolate forever," that the ex-
pression " in all cases in which it has heretofore been used" is
generic ; that it does not limit the right to the mere instances
in which it had been used, but extends it to such new and
like cases as might afterwards arise; and illustrates this view
by stating that felonies were tried by a jury, and if a new
felony were created, it must be tried in that way. The appli-
cation of that principle disposes of the question in hand. A
common nuisance is a misdemeanor, and indictable at common
law (*Wharton's Cr. Law*, 4) ; but the indictment was not tri-
able in the special sessions (2 *R. S.* 711, § 1; 714, § 22) ; and
when an action was brought by an individual to recover dam-
ages resulting from a common nuisance, the action proceeded
according to the course of the common law, and there was a
trial by jury. The violation complained of in this action is de-
clared a common nuisance, and the statute declaring it has not
prescribed the mode of trial. The rule, applicable to an indi-
vidual suing for damages occasioned by a common nuisance,
would apply to a trial to recover a penalty imposed by the
statute, at which the defendant would be entitled to a jury in
a justice's court, if demanded. (*Act of* 1818, 2 *R. L.* 570, § 95 ;
2 *R. S.* 242, § 93.) And at all events, in a court of record
proceeding according to the course of the common law, in a
court. (2 *R. S.* 409, § 4.) This action, then, regarded as one
at law to recover a penalty or to remove a nuisance, is an ad-
dition to a class of offences and actions well known and defined,
and in which the mode of trial was by jury, and was well
known and in use prior to the Constitution of 1846. It is no
answer to the conclusion thus expressed, that the court of
chancery had jurisdiction to restrain and abate a nuisance, and
that having acquired jurisdiction for any purpose, that court
retained it generally. The power of the court of chancery to
interfere in cases of nuisance cannot be doubted, although it is
stated, as an elementary rule, that in many of the cases indict-
able as common nuisances courts of equity have no cogni-

zance (*Willard's Equity*, 389; *Eden on Injunctions*, 160); and it seems that the relief was confined to the restraint or abatement of the nuisance. A prayer for damages would be stricken out. (*Brady* agt. *Weeks*, 3 *Barbour's S. C. Rep.* 157.) The courts did not always interfere in cases of common nuisance. The court of king's bench, in *Rex* agt. *Justices of Dorset* (15 *East*, 594), refused to interfere, and left the party to his remedy by indictment. These authorities are referred to not for the purpose of questioning the power of the court of chancery, where its interposition was asked in cases of nuisance, but to show that there was a distinction between common and private nuisances recognized in that court. But conceding this power in cases of nuisance, public and private, the history of that jurisdiction, and all the cases wherein it was employed, will show that it was exercised by injunction and on bills filed expressly for the purpose of obtaining that process. (2 *Story's Eq.* §§ 923, 924, 925; *Eden on Injunc.* 157; *Willard's Eq. Ju.* 388.) And there are no instances to be found in which the court of chancery has assumed jurisdiction to abate a nuisance, and decree a penalty or damages for its creation. As we have seen (*Brady* agt. *Weeks*, *supra*), the supreme court of this state, acting as a court of equity, struck out the prayer for damages as multifarious. I think it may also be said of this and kindred actions, that they are not, in their nature, such as would induce the interference of a court of equity. The plaintiffs have not suffered any injury, special or peculiar, and the building itself would not, as such, occasion injury to the plaintiffs. (*Penniman* agt. *New York Balance Company; Hecker* agt. *Same*, *supra*.) The nuisance is neither prejudicial to health nor offensive to the senses, and does not present any of the features of a nuisance known to equity or the common law. But without further pursuing this view, there are considerations which claim our attention, and which arise from the pleadings and the statute in reference to which they were framed.

The plaintiffs claim a penalty and the removal of the nuisance; they do not ask for an injunction, and none in fact was necessary. The buildings had been erected when the action

was commenced. The mischief was done, and there was no reason or ground for an injunction. An injunction would have accomplished nothing, and would not have been granted on the complaint. There was nothing to restrain. The action is, in form, therefore, an action at law, in which, by the statute, the plaintiffs are entitled, on proving the complaint, to double relief, viz.: judgment for the penalty claimed, and that the nuisance be removed. The complaint does not seek the aid of equity jurisdiction, and there is nothing in the case which calls for its interposition. The judgment demanded and rendered would not have been granted by a court of equity prior to the Constitution of 1846.

There is nothing in the complaint and nothing in the case which in either branch of it necessarily forms the ground of equity jurisdiction; and when that is the case, the right of trial by jury is absolute and cannot be denied (*Greason* agt. *Keteltas*, 17 *N. Y. Rep.* 491), while the whole scope of the action is certainly not of equity cognizance. Having thus considered the complaint and the case made, if we turn to the statute of 1849, *supra*, we find that the power to restrain in these cases thereby given is not conferred upon the supreme court and this court as courts of equity, but in addition to the power already possessed to enforce the penalty, which power to enforce the penalty was to be exercised according to the course of the common law, and by which course a jury trial was a right secured. The language of the statute shows that the intention of the legislature was, to confer upon the courts named a special jurisdiction in actions to be brought by the plaintiffs for the recovery of the penalties imposed for violations of its provisions. If the penalty was, in fact, incurred, then the statute was violated, and a common nuisance proved to have been created. The court might then direct the building to be removed. The inquiry as to the penalty would necessarily determine the question of nuisance, and thus present to the court all the elements requisite for the judgment to be given. This comprehensive provision as to the judgment to be granted did

not change the character of the action, but enlarged the relief to be granted. My conclusions are therefore as follows:

1. That although prior to the constitution of 1846 a court of equity had jurisdiction in cases of nuisance, and although this court possesses general law and equity jurisdiction, the complaint herein does not, by any averment made or relief asked, seek the aid of equity jurisdiction.

2. That in these actions this court acts as a court of law exclusively.

3. That if it does not so act, then this action is in form and action of law; and,

4. That in either point of view the defendant was entitled to a trial by jury on the issues presented.

The judgment should therefore be reversed.