# CHARLESTON.

## JELLY *v.* DILS AND SMITH.

Submitted June 19, 1885.—Decided December 5, 1885.

1. If a recorder of a city should issue a summons against a person to answer for a violation of an ordinance of the city, which was a nullity because contrary to the constitution, would such person be entitled to writ of prohibition upon such summons being served, or would his application for such writ at that time be premature; and *Quære:* Would he have a right to this extraordinary writ in such a case at any time, or would he have to rely upon his ordinary remedy by appeal? (p. 271.)

2. There must be a rule to show cause, why the prohibition should not issue, before the writ is issued. (p. 283.)

3. The rule to show cause operates as a prohibition until the further action of the court. (p. 283.)

4. Though the charge in a city court be one, in respect to which the party is entitled by sec. 10 of our bill of rights to a trial by jury, yet, if by an appeal clogged with no unreasonable restrictions he can have such a trial as a matter of right in the appellate court, his constitutional right of a trial by jury is not invaded by a summary proceeding in the first instance in the city-court. (p. 279.)

5. The ordinance of the city of Parkersburg requiring a city-license to sell spirituous liquors within the city is constitutional, as also is the ordinance imposing a fine of from $1.00 to $20.00 on any person selling spirituous liquors in said city without such city-license, to be imposed by the recorder of said city, and subjecting the offender to imprisonment by order of the recorder for not exceeding thirty days, if such fine and the costs of the proceedings are not paid, as the Legislature by act of February 7, 1870, has granted an appeal in such case to the circuit court of Wood upon terms and conditions deemed not unreasonable, and the defendant can then have his case tried by a jury of twelve men, if he wishes. (p. 281.)

*B. Powell* for plaintiff in error.

*C. D. Merrick* for defendant in error.

Statement by GREEN, JUDGE:

By the act incorporating the town of Parkersburg passed January 22, 1820, it is provided, that "in all cases arising under the by-laws and ordinances of said town the recorder shall have the like power and authority to have and determine the same and to enforce judgment, as a justice of the peace of the county of Wood could or might have, and from the decisions of the said recorder appeals may be taken to the court of said county in like manner as from the judgment of a justice of the peace." Acts of Virginia of 1820, ch. 108 sec. 5. After our constitution was amended, and the county courts were deprived of thier jurisdiction to try civil or criminal cases, the Legisleture by an act passed in 1881, (see Acts of that year p. 11 and Warth's Code p. 668 ch. 112 sec. 2,) declared, that the circuit courts shall have appellate jurisdiction in all cases, civil and criminal, when an appeal, writ of error or *supersedeas* may be allowed to the judgment or proceedings of any inferior tribunal. By this act the right to try an appeal from a judgment of the recorder of Parkersburg was transferred from the county court to the circuit court of Wood county.

On February 7, 1870, the charter of the city of Parkersburg, to which name the town of Parkersburg had been changed, was amended; and by sec. 25, as amended, the council of said city was authorized to grant city-licenses for any act, occupation or business in said city for which a State-license was required; and by sec. 44 of said act power was given to the mayor and city-council to pass all necessary laws and ordinances to carry into effect the provisions of this act and to enforce the faithful performance of the same. Ch. 107 of the Acts of 1877 requires among other things a State-license for the selling of spirituous liquors, &c. The city of Parkersburg under the authority of said acts of February 7, 1870, passed an ordinance, which provided that "It shall be the duty of all persons, who are required to take out a State-license for the purpose of carrying on any business, or pursuing any trade or calling within the limits of the city of Parkersburg, to take out a license from said city, and to pay said tax or said license," as was therein afterwards provided. And the tax and license to sell spirituous liquors, &c., at retail was in said ordinance fixed at $100.00 per annum. By another ordinance it was declared that it should be an offence against the city of Parkersburg "to do any act or follow any employment or business in said city, upon which the council of said city had imposed a tax, without having first paid the tax imposed by said council for the privilege." For this offence against the city this ordinance imposed a fine of from $1.00 to $20.00 and provided that the recorder should hear and determine all violations of the ordinances and assess the amount of such fine, which was an authority conferred upon him by the original charter of the city or town. By virtue of this authority on February 10, 1880, Wm. Dils, the recorder of the said city, issued his warrant, directing the sheriff to summon M. A. Jelly to appear before him at his office at 2 o'clock p. m. of that day to show cause why she should not be fined for unlawfully retailing, or giving away at her house in said city, spirituous liquors, wine, &c., in violation of the ordinance of the city in such case made and provided. This summons was duly served upon her, but instead of appearing, as required, before the recorder she on the next day presented

her petition to the judge of the circuit court of Wood county, setting out these facts and provisions of the ordinance and further showing that by the same ordinance it was provided that, if any one was found guilty of violating this ordinance, and was fined by the recorder therefor, he might be imprisoned till the fine and costs were paid, provided the imprisonment did not exceed thirty days, and that by the Act of February 27, 1877, the selling of spirituous liquors, wines, &c., without a State-license was made an indictable offence, being punished by a fine of from $10.00 to $100.00. She claims in this petition that this ordinance imposing this fine was void, being in violation of the constitution of the State; and she alleges that the recorder insisted on her answering this unlawful proceeding and charge, and she prayed a writ of prohibition might issue against him and C. B. Smith, the mayor of said city and *ex-officio* recorder, to prohibit them from proceeding to try her under said pretended ordinance, until the matter was fully inquired into by the circuit court of Wood county. This petition was sworn to and the judge forthwith without any rule or notice to the recorder or mayor ordered, "that a writ of prohibition do issue forthwith from the clerk's office of the circuit court of Wood county to said Wm. Dils, recorder, and C. B. Smith, mayor, as aforesaid, prohibiting them from any further attempt to try said M. A. Jelly for the alleged offence of unlawfully retailing spirituous liquors, &c., until the further order of the circuit court of Wood county, said writ to be returnable on the first day of the next term." The writ was accordingly issued and executed the same day. A declaration was tendered at the next term of the court in the case and ordered to be filed. And thereupon the defendants demurred to it generally. I deem it unnecessary to state the contents further than to say, that it set forth the facts hereinbefore stated and prayed for a prohibition and for her damages, $100.00, for which she claimed judgment. On April 8, 1880, the court rendered the following judgment upon said demurrer:

" This day came the parties, by their attorneys and thereupon the general demurrer of the defendants to the plaintiff's declaration being argued by counsel and maturely consid-

ered by the court, the court is of opinion that the said demurrer is well taken, and that the writ of prohibition prayed for in the cause should not issue. It is, therefore, considered by the court that the said demurrer be sustained, and that the writ of prohibition prayed for as aforesaid do not issue, and that the defendants recover of the plaintiff their costs by them about their defence herein in this behalf expended; and thereupon the plaintiff, by her attorney, moved the court to suspend judgment for sixty days, and judgment is accordingly so suspended, upon giving bond in the penalty of $50.00."

From this judgment the defendants obtained a writ of error and *supersedeas* from a judge of this Court.

Opinion by GREEN, JUDGE:

The defendants by their counsel urge the following grounds for sustaining the judgment of the court on the demurrer to the declaration, which, if they are well taken, apply equally to the granting of the prayer of the plaintiff originally for a prohibition asked. They are first, that it does not appear, that the want of jurisdiction in the recorder was raised before him; secondly, even if the recorder had no jurisdiction, this was not a proper remedy, as an appeal could have been taken from the decision of the recorder when rendered; third, the city of Parkersburg was a necessary defendant in this case but was not made a defendant. On this subject High in his work on Extraordinary Remedies, says: " At common law, to authorize a prohibition to an inferior court for want of jurisdiction, it was necessary that a plea to the jurisdiction should be tendered in that court, and that the court should have refused to entertain the plea. The common law rule is believed to be generally applicable in this country, and the writ will not go to a subordinate tribunal in a cause arising out of its jurisdiction, until the writ of jurisdiction has first been pleaded in the court below, and the plea refused; and when there has been no effort made to obtain relief in the court, which it is sought to prohibit, the superior court will refuse to exercise their jurisdiction by this extraordinary remedy." (High Ex. Leg. Rem. § 773.)

Again in section 771 he says: "In all cases where the party aggreived may have ample remedy by appeal from the order

or judgment of the inferior court, prohibition will not lie, no such pressing necessity appearing in each case as to warrant the interposition of this extraordinary remedy." This last proposition though doubtless correct may perhaps have no application here as the judgment was only for twenty dollars; and while an appeal lay to the circuit court, none lay perhaps to this Court. If the judgment had also included imprisonment, then an appeal could have been taken from the circuit court to the Court of Appeals; and there would for this reason seem to be no ground for the issuing of a writ of prohibition, even if the recorder of Parkersburg had no jurisdiction. But the case could have been brought to this Court, if he had attempted to enforce his judgment by imprisonment, as the ordinance authorized him to do, for then a writ of *habeas corpus* could have been obtained, and this Court has jurisdiction as an appellate court in all cases of *habeas corpus.* If we were to admit that the recorder of Parkersburg had no jurisdiction in this case, it seems to me that the application for this writ of prohibition was not only premature but unnecessary. But I express no positive opinion on these points, as the petition for the writ of prohibition ought to have been refused, because on its face it showed, that the recorder of Parkersburg had the jurisdiction, which he was exercising. I have made these remarks because a disposition to resort to prohibition and other extraordinary remedies, when the law affords ample common remedies, has exhibited itself in this State and ought to be discouraged; and it would seem that the refusal of our courts to permit the unnecassary resort to these extraordinary remedies has been heretotore insufficent to check this disposition. There have probably been more efforts to apply this extraordinary remedy in this State in the last twenty years than there have arisen in Virginia in a century.

The jurisdiction of the recorder of the city of Parkersburg is denied, because, it is claimed, the ordinance, under which he was acting, was contrary to our Constitution and void. If it was not contrary to our Constitution, then there is the question but that this ordinance was valid; for by an act of the Legislature passed on February 7, 1870, to amend the charter of the city of Parkersburg, the twenty-fifth sec-

tion as amended provides as follows : "The council shall have
authority within the said city to grant all such licenses as are
authorized by secs. 1 and 2 of ch. 32 of the Code of West
Virginia, where the act, occupation or business for which
such State-license is necessary to be done or carried on in
said city."

Ch. 32 of the Code referred to provides in sec. 1 among
other things :

"No person without a State-license therefor shall sell or
expose for sale at retail spirituous liquors, wine, porter, ale
or beer, or any drink of like nature."

And again the thirty-second section of the charter of the
city of Parkersburg as amended by this act of the Legisla-
ture provides :          •

"The recorder shall have exclusive original jurisdiction to
hear and determine all complaints for violation of the laws
or ordinances of said city.   He shall issue his warrant to
summon or apprehend the person charged therewith ; and to
impose such penalty and punishment as are prescribed by
said law and ordinances ; *provided*, that in all cases where a
fine is imposed exceeding $10.00, or a party imprisoned for a
term greater than ten days, an appeal may be taken from
any such decision upon the same terms and conditions that
appeals are taken from the judgment of a justice."

Then by an act of the Legislature of Virginia, passed March
17, 1860 : "To reduce into one the several acts incorporating
the town of Parkersburg in the county of Wood, and define
the powers of said town," the twelfth section provides as fol-
lows :

"The council shall have authority to pass all ordinances
(not repugnant to the Constitution and laws of the United
States or of this State), which shall be necessary or proper
to carry into full effect any power, authority, capacity or
jurisdiction which is or shall be granted to or vested in said
town, or in the council or any officer of said town ; and to
enforce any or all of their ordinances by removal, fines and
penalties, and by imprisoning the offender or offenders ; and
upon failure to pay any fine or penalty imposed, by compel-
ling them to labor without compensation at any public work
or improvements undertaken or to be undertaken by said

town, or by either or both the modes first above mentioned; provided, however, that no person shall be imprisoned or compelled to labor as aforesaid more than thirty days for any one offence."

These acts, if constitutional, clearly authorize the passage of the ordinances, on which the proceedings in this case were based; and the petition for the writ ought not to have been entertained but the prohibition refused, when said petition was presented. This Court has in effect just decided in the case of *The Town of Moundsville* v. *James H. Fountain* that these acts and ordinances are not in violation of secs. 4, 5 or 14 of our bill of rights. The only other provision of our Constitution, which, it is claimed, they violate, is sec. 10 of our bill of rights which is : "No person shall be deprived of life, liberty or property without due process of law and the judgment of his peers." (Warth's Code, p. 8.)

What is here meant by *due process of law ?* Justice Edwards said in *Westervelt* v. *Gregg,* 12 N. Y. 209 : "*Due process of law* undoubtedly means in due course of legal proceedings, according to those rules and forms, which have been established for the protection of private rights." And by *judgment of his peers* is meant a trial by jury. In the constitution of many of the states instead of the phrase due process of law we find the phrase *the law of the land,* which, it is universally agreed, means the same thing; and in a few of the states the phrase *due course of law* is used instead of *due process of law,* which it is also agreed means the same thing. The phrase *judgment of his peers* is omitted in the provision in the constitution of many of the states. But its omission, as we shall. presently see, does not alter the meaning of this provision. In all of the constitutions, which I have examined, where both these phrases *due process of law* and *judgment of his peers* are used, these are connected together by the disjunction *or* so that this provision of the constitution reads : "No person shall be deprived of life, liberty or property without due process of law or the judgment of his peers." Why in our constitution the copulative *and* was used instead of the disjunctive *or,* it is difficult to conceive unless it was a mere clerical error, which I suspect to be true. It obviously did not mean that no person shall be deprived of his life, liberty

or property without a trial by jury; for there never has been a time in this State or in any other State or in England, in which it was held indispensable that to deprive a man of his life, liberty or property he should in all cases have a trial by jury. And in truth it would be utterly impracticable to carry on any government, if this construction was placed on this provision of the constitution, and it was habitually acted upon. Every day men are and have been for hundreds of years past deprived of their property by decrees in chancery. In fact men are much oftener and to a much greater extent deprived of their property by decrees of court than by the verdict of a jury. Men too are habitually deprived of their property by distress for taxes or distress for rent and for fee-bills without any trial by jury. So too men are now and always have been sometimes deprived of their liberty without a trial by jury, as by order of arrest under certain circumstances sued out in civil cases on the ground of fraud, and in the punishment of contempt of court, in which there is very generally no trial by jury, and in the constant arrest of the accused in criminal cases long before there is any trial by a jury. A man may be even deprived of his life without a trial by jury, when he is legally tried by a court-martial.

Our constitutional provision must then be interpreted to mean the same as the constitution of other States; and the word *and* used in it be interpreted to mean *or*. This must be its true interpretation, our constitutional convention intending to make no change in this fundamental principle of our government, and meaning only that no person should be deprived of his life, liberty or property without a trial by jury in those cases, where a trial by jury had been theretofore regarded as proper and had been the recognized and established mode of proceeding. This must be its meaning, and it really accords fully with the previous clause : " No man shall be deprived of his life, liberty or property without due process of law." For that would not be regarded as *due process of law*, which deprived a man of his life, liberty or property without the intervention of a trial by jury in cases, where a trial by jury had been always recognized as proper, and where it had been established as the only proper protection for private rights in a particular character of cases.

So construing this provision of our bill of rights, we hold that in substance it accords with similar provisions in the constitutions of all the States; and we may then look to the decisions in other States in determining whether in such cases as this a trial by jury was guaranteed by our constitution. An examination of these decisions leads us to the conclusion, that this provision of our bill of rights gives a right of trial by jury, of which the Legislature can not deprive a party without his consent, in all cases civil and criminal, in which it existed at the time of the adoption of the constitution of the United States, and not only in such cases but in all cases, which are similar and may properly be said to belong to the same class. This provision of our constitution, as interpreted by the decisions of the courts, was not intended to create, enlarge or restrict the right of trial by jury but to preserve it inviolate, as it existed, when the constitution was adopted, and to permit no encroachment upon it. The decisions differ not so much in the rule, by which this constitutional provision should be interpreted, as in the application of the rule to the particular case before the court. The rule, as we have stated, would of course require a trial by jury in one State, if such had been the usage before the adoption of the constitution, when it might not require it in another, where no such usage had existed previously. As sustaining this rule of interpretation, we refer to the following cases : *Plimpton* v. *Somerset,* 33 Vt. 283 ; *Fire Department* v. *Harrison,* 2 Hilt. 455 ; *Wynchamer* v. *People,* 13 N. Y. 426 ; *Byers* v. *Commonwealth,* 42 Pa. St. 89 ; *Adam Marks* v. *The Council of Akron,* 14 Ohio 589 ; *C. Trigally* v. *The Mayor & Aldermen of Memphis,* 6 Cold. 382 ; *The Lake Erie Railroad Co.* v. *Heath,* 9 Ind. 558.

There is no difficulty in the application of this rule in the case before us. The ordinance, which the recorder was proceeding to enforce by a fine of from $1.00 to $20.00 for selling spirituous liquors without license, authorized the accused to be found guilty without the verdict of a jury, and if he failed to pay his fine, it authorized the mayor to imprison him, till he paid his fine, such imprisonment not to exceed thirty days. Now, though this was not a crime, of which the plaintiff in error was accused, and therefore she could not have been proceeded against by indictment, yet she clearly had a

right to a trial by a jury. For this right she had, when our present constitution was adopted. By our first constitution the Legislature had the power to establish courts of limited jurisdiction, but their judgments without reference to their amount or character were to be subject to appeals to the circuit courts. (Code, ch. 6, sec. 17.) The present constitution, Art. VIII, sec. 19, (Warth's Code, p. 26,) provides as follows:

"The Legislature may establish courts of limited jurisdiction within any county, incorporated city, town or village, with the right of appeal to the circuit courts, subject to such limitations as may be prescribed by law; and all courts of limited jurisdiction heretofore established in any county, incorporated city, town or village shall remain as present constituted until otherwise provided by law. The municipal court of Wheeling shall continue in existence until otherwise provided by law, and said court, and the judge thereof, shall exercise the powers and jurisdiction heretofore conferred upon them; and appeals in civil cases from said courts shall be directly to the Supreme Court of Appeals."

This provision was inserted in our constitution in the amendment made in 1880. The original provision, for which it is a substitute, contained in the constitution of 1872 was as follows: "The legislature may establish courts of limited jurisdiction within any incorporated town or city, subject to such appeal as now is or may hereafter be prescribed by law." (Constitution of 1872, Art. VIII., sec. 22, Acts of 1872–3, p. 29.) As I understand these provisions of our constitution, the judgments of all municipal courts including of course the mayor and recorder, where judicial powers were conferred on them, whether said judgments were in controversies between parties or for breaches of the ordinances of such municipal corporations, were subject to appeal as of right without regard to amount to the circuit court, and such appeal was not subject to legislative limitation, from the foundation of the State till 1872. For, if by the charter of any municipal corporation, such as Parkersburg, existing when this State was formed, there was any limitation or restriction placed on this absolute right of appeal, while these corporations continued in existence under their existing charters, the legislative assent to their continuance

being presumed till such time as the Legislature might choose to declare their dissent, the legislative assent to such limitations to the rights of appeal could not be presumed. From 1872 to 1880 the Legislature had the power to change this absolute and unconditional right of appeal to such appeals as it might prescribe. But in making such change it could not take away the right of trial by jury, which the defendant had up to that time, for this right was preserved by the bill of rights as it existed, at the time the bill of rights was adopted; and as the municipal courts had no juries, the trial by jury could only be preserved by granting a right to appeal from every judgment of such court. So that, in order to make this right of the Legislature to prescribe the appeal to be granted to consist with this provision of our bill of rights, (and it is to be presumed they were not intended to be in conflict) we must confine the power of the Legislature to such limitations of the right of appeal, as will not operate to destroy the right of a trial by jury.

After 1880 the absolute and unrestricted right of appeal from all judgments of municipal courts remained subject only to such limitations as the Legislature had imposed between 1872 and 1880, after which time the Legislature continued to have the power to limit appeals from the judgment of all municipal courts in the State, but its power of limitation was still confined to such changes, as would not substantially deny the defendant his right to a trial by jury in such cases. Of course the Legislature may prescribe the time within which the defendant must take such appeal; but a much more difficult and important question is: Can the Legislature prescribe, that, before he takes his appeal, he shall give security to pay the costs of the appeal, or that he shall give security to perform and satisfy the judgment of the court below, should such judgment be affirmed? On this question the decisions of the courts have not been uniform. They have generally held, that the defendant's right of trial by a jury conferred on him by the bill of rights is not invaded by the summary proceedings in the first instance in the municipal or other local court, if by an appeal clogged with no unreas-

onable restrictions he can have such trial as a matter of right in the appellate court, where his appeal can be tried by a jury. (*Stuart* v. *Mayor*, 7 Md. 501; *Morford* v. *Barnes*, 8 Yerg. 444; *McDonald* v. *Schell*, 6 Serg. & R. 240; *Beers* v. *Beers*, 4 Conn. 53; *Jones* v. *Robbins*, 8 Gray 329.

The question has been raised : What would constitute a clogging of the appeal with an unreasonable restriction on the part of the Legislature, so that the defendant would be substantially deprived of his right of trial by jury by having his right of appeal so limited and restricted, that he could not obtain it, and without it he could not get his right of trial by jury ? It has been held, that, if he could only obtain an appeal upon giving security to abide by and perform the judgment of the Appellate Court, this would be putting an unreasonable restriction on the right of appeal, and that the constitutional right of trial by jury would thereby be denied to the defendant. (*State of Minnessota* v. *Everett*, 14 Minn. 439, 445–6.) But the weight of authority is decidedly the other way. (*Morford* v. *Barnes*, 8 Yerg. 444; *Beers* v. *Beers*, 4 Conn. 539; *State of Iowa* v. *Rencke*, 9 Ia. 207; *The State* v. *Brennan's Liquors*, 25 Conn. 279; *Gaston* v. *Babcock*, 6 Wis. 503; *Hapgood* v. *Doherty*, 8 Gray 373; *Stewart* v. *Mayor and City of Baltimore et al.*, 17 Md. 512; *City of Emporia* v. *Valner*, 12 Kan. 631.) In the case of *Iowa* v. *Rencke*, 9 Ia., Judge Woodward delivering the opinion of the court says on p. 207 : "But it has at no time nor in any country been held that this provision meant that the defendant shall have such a jury, at all times and under all circumstances. We believe the doctrine to be, at least in the United States that the party shall have *access* to a jury of twelve, if he demand it, but not that he may require it for all offences in the first instance, nor in all courts. All of the States have since the beginning of the governments, punished for the lesser offences, without such a jury; and all the northwestern States have done the same thing, ever since the adoption of the ordinance. However strong may be the tendency, in some parts, to unsettle every question, and to consider nothing settled permanently,. we do not think it advisable, on this subject, to undertake to overthrow what has been regarded as well settled law for so long a time and in so many States.

We must regard it as in the power of the people when forming their fundamental law, that a jury shall consist of six in inferior courts, leaving the way open to a jury of twelve by appeal. It is sufficient if a party can obtain a jury of twelve by appeal. This brings us to another position of the defendant, which is, that the decree of this right of appeal, if the above doctrine be correct, can not be trammeled and fettered by a requirement that the defendant give bond, in a penalty, to pay such sum as may be adjudged against him on appeal. In other words the right of appeal can not rightfully be restricted by a condition that he give such a bond. * * * * But our law does not require the appellant to give a bond, nor a recognizance with such a condition as above named. The defendant concedes that the law may require him to enter into a recognizance with surety for his appearance. Now this is just what our law does."

According to the views expressed by the court in that case this is all that the law could constitutionally require. But in other cases it has been held, that security of this sort could be required. (*Morford* v. *Barnes*, 8 Yerg. 446.) It would seem under our constitution that in awarding such an appeal the Legislature may constitutionally require that security should be given for the payment of the fine itself, if the judgment of the court below be affirmed; for sec. 19 of Art. VIII. of our constitution provides : " The Legislature may establish courts of limited jurisdiction within any county, incorporated city, town or village, with the right of appeal to the circuit court, subject to such limitations as may be prescribed by law." As I understand this provision, the Legislature is bound to grant appeals from the decisions of these municipal courts; but it can attach to such appeal any condition in regard to security to comply with the judgment of the appellate court, which it deems proper, provided always that it is clogged with no unreasonable restrictions, the effect of which would be to deprive the defendant of his right of trial by jury. But if the security required be reasonable, as for instance to pay the fine not exceeding $20.00, if the judgment should be affirmed, the fact, that the defendant was unable to give such security, could not justly be regarded as

depriving him of a right of trial by jury, though like the requiring of the accused in a felony case recognizance with security for his appearance at court, it might operate so, that he would be imprisoned without first having had his trial by jury as provided by the constitution. This would be his misfortune; but as the demand for such security for his appearance is not unreasonable but essential to the public safety, such a demand would not make his imprisonment without a trial by jury unconstitutional. The constitutional convention knew of these diversities of views, which I have pointed out, and yet it conferred on the Legislature the power to subject these appeals to limitations such as they might deem just and proper. This security for the payment of the fine, if the appellate court should affirm the judgment below, was required by some States, when this constitution was adopted; and yet the convention thought proper to confer on the Legislature this power of thus restricting appeals. Under these circumstances we must, it seems to me, conclude that the convention intended to give to the Legislature the power, if it thought proper, to require this when the judgment was so small as not to entitle the defendant to a trial by jury, but not to authorize it to require any unusual and unreasonable limitations, which would operate as a denial substantially of the right of trial by jury in cases, where the right of trial by jury was intended to be conferred by the Constitution.

It may be said that this interpretation of our Constitution puts the liberties of the people in towns and cities very much in the power of the Legislature. But the truth seems to be judging from our Constitution, that the people of the State thought, there was but little risk in thus conferring power on the Legislature, which might to a certain extent restrict their right of trial by jury. Thus in the bill of rights, secs. 4 and 14 it is not laid down as broadly as it is in the constitution of many other States, that no person should be answerable for any crime, unless on presentment or indictment by a grand jury and a trial by a petit jury; but that right is qualified by the words any crime " not cognizable by a justice," leaving it to the Legislature to define the crimes cognizable by a justice, in the trial of which the accused might be deprived of the benefit of these guarantees.

Whether these provisions of our Constitution, which for public convenience conferred these great powers on the Legislature, were or were not wise, we do not enquire. It is our duty to see that the Constitution is enforced according to the intent of the people as expressed in the instrument; and if they have unwisely conferred on any of these servants greater power than was prudent, it is for them to withdraw it by an amendment of the Constitution.

The following is the provision in the charter of the city of Parkersburg as amended February 7, 1870: "In all cases where a fine is imposed by the recorder for an amount exceeding $10.00 or a party is imprisoned for a term greater than ten days an appeal may be taken from any such decision upon the same terms and conditions that appeals are taken from the judgment of a justice." These terms and conditions are set forth in ch. 50, sec. 164 of Code of West Virginia p. 370, Warth's Code p. 416; and the only one of them, which could be regarded as an unreasonable restriction on the right of trial by jury, is the one requiring a bond of the appellants with good security with condition, that the person proposing to appeal will perform and satisfy any judgments which may be rendered against him by the circuit court on such appeal. As the punishment, which under the ordinance of the city of Parkersburg could have been inflicted on the appellant, was only a fine of from $1.00 to $20.00, I can not in view of the current of decisions in this country and in view of the fact, that by our Constitution a person is not entitled to a trial by jury, when the amount in controversy, does not exceed $20.00, (Constitution, Article III, sec. 13, Warth's Code, p. 8.) deem the requiring of such a bond unreasonable. The provision above quoted of the charter of the city of Parkersburg allowing an appeal from a judgment of a recorder imposing a fine lays no unreasonable restriction on the right of trial by jury and is valid and constitutional.

But there are cases in which this provision of the charter makes no provision for an appeal. By sec. 19 of Art. VIII. of our Constitution (Warth's code p. 26) the right of appeal in the circuit court exists from every judgment rendered by a corporation court, mayor or recorder, the Legislature having a right to place upon such rights reasonable restrictions, as we

have heretofore said; and if it fails to legislate upon the subject, the absolute right of appeal free from all restrictions exists. And whenever an appeal is not provided for by the above ordinance of the city of Parkersburg, such appeal is fully provided for by the Constitution if not by legislative enactment. So that there is nothing in this ordinance contrary to the Constitution. In the case before us the council of Parkersburg had, by act of the Legislature, authority to pass the ordinance, which, it is claimed, the plaintiff in error violated, and the recorder had authority to inflict a fine therefor, and the acts of the Assembly conferring this authority are constitutional.

The mode of proceeding in this case was irregular, even if the recorder had no jurisdiction, and a writ of prohibition was the proper remedy. The party prohibited must always be notified, upon which a writ of prohibition issues. And the proper mode of proceeding is to issue a rule to show cause why the prohibition should not issue, before the writ is issued. The service of this rule operates as a prohibition until the further action of the court. And if after the service of this rule the defendant or the judge of the inferior court should proceed with the case, he would thereby subject himself to attachment. (*Mays* v. *James*, 12 Gratt. 17–26.) Judge Moncure there states the proper mode of proceeding in such a case, as follows, p. 26 :

"The following would seem to be the proper course to be pursued on an application for a writ of prohibition to a circuit court or a judge thereof in vacation; the ground of the application should be set out in a proper suggestion, verified by affidavit, as to such material facts as do not appear on the record; or in affidavits instead of a suggestion. Code, ch. 155, p. 612. If upon suggestion or affidavits the court or judge be clearly of opinion that there is no good ground for a prohibition, it ought at once to be denied. But if otherwise, a rule should be made upon the adverse party to show cause why the writ should not be issued. The execution of the rule upon the party, and the judge of the inferior court will have the effect of a prohibition *quousque* or until the discharge of the rule. Upon the return of the rule executed, the court or judge will rule it absolute or discharge it, as

may then seem to be proper; and in the former case may direct the applicant to declare in prohibition before writ issued; and ought to do so if the defendant require it. If such direction be given, the futher proceedings in the case will of course be in pursuance of the Code, ch. 155, p. 612."

The first error therefore in this case was committed by the circuit judge, when he made an order on the presentation of the petition of Jelly that a writ of prohibition do issue forthwith. Instead of this he should have ordered the issuing of a rule against Dils, recorder, and C. B. Smith, mayor, of Parkersburg, and also against the city of Parkersburg to show cause why a writ of prohibition should not issue prohibiting them or either of them from further proceeding in the trial of Jelly for the alleged offence. It was hardly necessary in this case to file any declaration; but the case could probably have been quite as conveniently finally disposed of on the return of the rule, which should have been done by discharging the rule. But as a declaration has been filed, and it has been demurred to, and the whole case been proceeded with, just as though this writ of prohibition, which was issued under the order of the court, had been simply a rule to show cause, why such a writ should not issue, and as the court sustained the demurrer and refused to issue the prohibition prayed for in the declaration, and as we are for the reasons which we have stated of the opinion, that no writ of prohibition should have been awarded in the cause, the allegations in the declaration not justifying the issuing of such writ, it now remains only to put the judgment in proper form.

The judgment of the circuit court of Wood county rendered April 8, 1880, must therefore be amended by first quashing the writ of prohibition issued prior to the filing of the declaration, and when thus amended affirming the said judgment of the circuit court of Wood county of date April 8, 1880; and the defendants in error must recover of the plaintiff in error their costs in this Court expended and $30.00 damages.

AMENDED AND AFFIRMED.